MARCUS T. RIPLEY v. JACOB SELIGMAN.

*Resulting trust—Bona fide purchaser—Quitclaim deed—Condition —Witness—Matters equally within knowledge of deceased person—Laches.*

1. How.  Stat. § 7545,[1] prohibiting the opposite party, in a suit " prosecuted or defended by the heirs, assigns, devisees, lega-

[1] See the following cases involving the construction of this statute:
*McMillan v. Bissell,* 63 Mich. 75; *Wallace v. Wallace,* Id. 331; *Pendill v. Neuberger,* 64 Id. 220; *Stackable v. Stackable Estate,* 65 Id. 515; *Pendill v. Neuberger,* 67 Id. 562; *Hood v. Olin,* 68 Id. 175; *Taylor v. Bunker,* Id. 258; *Hillman v. Schwenk,* Id. 293; *Buffum v. Porter,* 70 Id. 623; *M'Cutcheon v. Loud,* 71 Id. 434; *Webster v. Sibley,* 72 Id. 680; *Doolittle v. Gavagan,* 74 Id. 11; *Beardslee v. Reeves,* 76 Id. 661; *In re Lautenshlager's Estate,* 80 Id. 285; *Wilson v. Wilson Estate,* Id. 472; *Lake v. Nolan,* 81 Id. 112; *Barker v. Hebbard,* Id. 267; *Jackson v. Cole,* Id. 440; *Lyttle v. Railway Co.,* 84 Id. 289; *McHugh v. Dowd Estate,* 86 Id. 412; *Penny v. Croul,* 87 Id. 15.

88 MICH—12.

tees, or personal representatives of a deceased person," from testifying to facts which, if true, must have been equally within the knowledge of the deceased, is construed as follows:

a—The word "assigns" is used in its legal sense, and signifies a person to whom any property or right is transferred by a deceased person in his life-time.

b—The statute is broad enough to cover *successive* transfers, or where the controversy depends upon the acts or dealings with the property of the deceased in his life-time; and any one who is called upon to prosecute or defend some interest which is affected by the act or agreement of the deceased party through whom he claims may invoke the protection of the statute.

c—The case of *Twiss v. George*, 33 Mich. 253, in which it was held that the statutory prohibition did not extend to controversies with third persons acting in their own right as purchasers during the life-time of the deceased, and not taking by *post mortem* estate, arose under the statute as it read before the 1875 amendment, and cannot be taken as an exposition of the present law.

d—While the representatives of a deceased person cannot waive the provision of the statute (*McHugh v. Dowd Estate*, 86 Mich. 412), the decedent's assigns may do so.

e—In applying the statute, care should be observed in distinguishing between matters equally within the *knowledge* of the deceased and matters within his *information*, as it is only as to the first that the opposite party is not permitted to testify.

f—The statute was not intended to exclude testimony concerning facts capable of proof by documentary evidence accessible to both parties, as, for instance, the dates or contents of written instruments of a public character, where such testimony is not excluded under other rules governing the admission of testimony.

2. There is no impropriety in a plaintiff refusing to answer questions whether he has made any arrangements with any person to carry on the suit for a share of what may be recovered therein, or by which any other person than himself is to pay the whole or any part of the expenses of the litigation, such inquiries being objected to by his counsel, who instructs him not to answer them.[1]

3. The owner of the minutes of pine lands agreed in writing to select therefrom and locate in the name of a second party 5,000

---

[1] See *Denman v. Johnston*, 85 Mich. 388, 389 (head-note 12), and cases there cited.

to 10,000 acres, the second party agreeing to furnish the necessary means, and to give to the first party an undivided one-fourth part of all lands so selected and located, which agreements were fully performed except the conveyance to the first party of his interest in the lands located. And it is held that the contract did not declare a trust; that upon its face it had simply the elements of an executory contract; and that it was the duty of the second party to make such conveyance, and until it was made the law would imply that he held the title to the interest agreed to be conveyed in trust for the party entitled to such conveyance.

4. While neither party to such a contract might be able to enforce specific performance of the respective agreements to select and to furnish the money with which to locate the lands, either would have a remedy at law for damages for non-performance of the contract; citing *McCreery v. Green*, 38 Mich. 172.

5. Implied or resulting trusts may be established by proving the transaction out of which they result or are implied, and such proof may be by parol testimony.

6. A grantee in a quitclaim deed may invoke the aid of How. Stat. § 5572, which declares that "no implied or resulting trust shall be alleged or established to defeat or prejudice the title of a purchaser for a valuable consideration, and without notice of such trust;" and he has the burden of showing the facts necessary to bring him within the statute.

7. The considerations recited in deeds are not sufficient evidence to show the consideration upon which a party can rely when he has the burden of proving that the consideration paid was valuable in a suit between the grantee and third persons.

8. The case of *Peters v. Cartier*, 80 Mich. 124, holding that a grantee in a quitclaim deed is not a *bona fide* purchaser, and takes only the interest of his grantor, arose under the recording laws, and is, therefore, authority only in cases arising under such laws.

9. A clause in a quitclaim deed of an *undivided interest* in lands, purporting to be executed in consideration of the sum of one dollar and of love and affection, which declares that the conveyance is made upon the express condition that the grantee shall pay or cause to be paid, in due season, all taxes assessed upon the *whole* of a portion of the lands described in the deed, is held to be a condition subsequent, and not the valuable consideration referred to in How. Stat. § 5572, under which no implied or resulting trust can be alleged or established to defeat or prejudice the title of a purchaser for a valuable consideration.

10. A devisee takes no greater rights in land devised than the devisor had, and is not a *bona fide* purchaser for a valuable consideration; citing *Burns v. Berry*, 42 Mich. 176.

11. Lapse of time alone is not sufficient to bar equitable relief.

12. The term "laches" involves the idea of negligence,—a neglect or failure to do what ought to be done under the circumstances to protect the rights of the parties to whom it is imputed, or involving injury to the opposite party through such neglect to assert rights within a reasonable time.

13. Lapse of time, though not a sufficient prohibition to constitute a statutory bar, may, if circumstances warrant, so operate by way of evidence as to create a presumption that the parties have waived or abandoned their rights; and in this connection the fact that during the delay one of the parties died should have its proper bearing.

14. A written contract by which the owner of the minutes of pine lands agrees to select therefrom and locate from 5,000 to 10,-000 acres in the name of his co-contractor, who agrees to furnish the necessary means for that purpose, and to give to the first party an undivided one-fourth part of the lands so located, which contract has been executed except as to the conveyance of said interest, creates an equitable interest in the land which vests in said first party, and cannot be released or surrendered except by writing signed by him, or by the act or operation of law; citing How. Stat. § 6179; *Seligman v. Ten Eyck Estate*, 60 Mich. 267; *Whiting v. Butler*, 29 Id. 122; *McEwan v. Ortman*, 34 Id. 325.

15. An agreement by the second party to such a contract to furnish the money to pay the expenses and taxes is held to have been for the benefit of both parties, it not being a part of the consideration moving to the first party, and in a suit by him to enforce the trust arising out of said contract he should be charged with his proportion of the taxes paid.

Appeal from Chippewa. (Steere, J.) Argued June 9, 1891. Decided October 30, 1891.

Bill to declare a trust in lands. Defendant appeals. Decree modified and affirmed. The facts are stated in the opinions.

*John A. Combs* (*Hanchett, Stark & Hanchett*, of counsel), for complainant, contended:

1. The contract is produced by Mr. Ripley, and is thus shown to be in his possession, and this is evidence of its delivery to him; citing *Patrick v. Howard*, 47 Mich. 40, 46; *Seligman v. Ten Eyck Estate*, 49 Id. 104, 109, 110; *Foster v. Hill*, 55 Id. 548.

2. It was the defendant's privilege to waive the objection that the facts were equally within the knowledge of Buckland, if such objection existed, and he is held to waive it unless the objection is made when the evidence is given; citing 1 Greenl. Ev. § 421; *Perrott v. Shearer*, 17 Mich. 48, 53; *Locke v. Farley*, 41 Id. 405–407; *Donelson v. Taylor*, 8 Pick. 390, 392; *Levin v. Russell*, 42 N. Y. 251, 255, 256.

3. In support of the claim that Buckland held the title to an undivided one-quarter of the lands in trust for complainant, counsel cite How. Stat. § 5573 (subd. 5); 1 Perry, Trusts, §§ 82, 112; 2 Story, Eq. Jur. § 972; *Patton v. Chamberlain*, 44 Mich. 5, 6; *Compo v. Iron Co.*, 49 Id. 39; *Chadwick v. Chadwick*, 59 Id. 87, 92; *Cummings v. Corey*, 58 Id. 494, 502; *Loring v. Palmer*, 118 U. S. 321, 339, 344; *Culbertson v. Witbeck Co.*, 127 Id. 326, 334, 335; *Pinch v. Anthony*, 8 Allen, 536, 539; *Seymour v. Freer*, 8 Wall. 202, 213, 214; and equity will enforce such trust; citing 2 Perry, Trusts, § 816; 2 Story, Eq. Jur. § 979; *Inches v. Hill*, 106 Mass. 575, 578; *Stone v. Hackett*, 12 Gray, 227; *May v. LeClaire*, 11 Wall. 217, 236; and complainant may follow the trust property into the hands of the defendant, and enforce the trust against him; citing 1 Perry, Trusts, § 217, 2 Id. § 828; *Oliver v. Piatt*, 3 How. 333, 401; *Seymour v. Freer*, 8 Wall. 202, 215; *Pinch v. Anthony*, 8 Allen, 536, 539.

4. Actual payment of the consideration, which must be a valuable one, made in good faith before notice, is necessary to constitute a *bona fide* purchaser so as to discharge lands from a trust; citing *Dixon v. Hill*, 5 Mich. 404, 409; *Kohl v. Lynn*, 34 Id. 360; *Haescig v. Brown*, Id. 503; *Webster v. Bailey*, 40 Id. 641; 1 Perry, Trusts, §§ 219–221.

5. The burden of proving an actual payment of a valuable consideration is cast upon the party who claims as a *bona fide* purchaser, or under a *bona fide* purchaser, and the proof should be clear and convincing where the title sought to be sustained arises through a fraud; citing *Berry v. Whitney*, 40 Mich. 65, 71; *Letson v. Reed*, 45 Id. 27; *Atwood v. Bearss*, Id. 469, 474.

6. Aside from any question of notice or payment of consideration, the defendant is not a *bona fide* purchaser, because the deeds to him are quitclaim deeds, and the deed from Buckland to Mrs. Seligman is a quitclaim deed; citing *Peters v. Cartier*, 80

Mich. 124; *May v. LeClaire*, 11 Wall. 217, 232; *Villa v. Rodriguez*, 12 Id. 323, 338, 339; *Dickerson v. Colgrove*, 100 U. S. 578, 584; *Baker v. Humphrey*, 101 Id. 494, 499; *Watson v. Phelps*, 40 Iowa, 482; *Smith v. Dunton*, 42 Id. 48; *Springer v. Bartle*, 46 Id. 683, 690; *Postel v. Palmer*, 71 Id. 157, 159; *Runyon v. Smith*, 18 Fed. Rep. 579, 582; *U. S. v. Sliney*, 21 Id. 894; *Martin v. Morris*, 62 Wis. 418, 428.

7. The interest which complainant had in the lands was a vested interest, an interest by contract, an equitable title. To surrender or release that interest would require an instrument in writing; citing How. Stat. § 6179; *Seligman v. Ten Eyck Estate*, 60 Mich. 267, 276; *Whiting v. Butler*, 29 Id. 122, 144; *McEwan v. Ortman*, 34 Id. 325.

8. The title to the land was held by Buckland in trust for Ripley, and the statute of limitations does not begin to run, and there are no laches, in the case of a trust, until it has been repudiated by the trustee; citing 2 Perry, Trusts, §§ 863, 864; 2 Story, Eq. Jur. § 1520a; Busw. Lim. §§ 341, 342; *Oliver v. Piatt*, 3 How. 333, 411; *Seymour v. Freer*, 8 Wall. 202, 218; *Carpenter v. Cushman*, 105 Mass. 417, 420; *Albretch v. Wolf*, 58 Ill. 186, 190; *Middletown v. Newport Hospital* (R. I.), 15 Atl. Rep. 800.

9. The contract recognizes and refers to the minutes of land in the Upper Peninsula, which Ripley then has, which minutes may be identified by parol testimony; citing 1 Benj. Sales, §§ 211, 221; *Kimball v. Myers*, 21 Mich. 276, 285; *Slater v. Breese*, 36 Id. 77, 80, 81; *McCreery v. Green*, 38 Id. 172; *Crooks v. Whitford*, 47 Id. 283, 286; *Harrison v. Ingersoll*, 56 Id. 36, 38; *Adams v. Morgan*, 150 Mass. 143 (22 N. E. Rep. 708); *Beckwith v. Talbot*, 95 U. S. 289, 292; *Oliver v. Insurance Co.*, 82 Ala. 417 (2 Sou. Rep. 445); *Barry v. Coombe*, 1 Peters, 640, 653; *Thornell v. Brockton*, 141 Mass. 151, 153; *Owen v. Thomas*, 3 Mylne & K. 353; *Ball v. Benjamin*, 73 Ill. 39, 41; *Swett v. Shumway*, 102 Mass. 365, 368; *Stoops v. Smith*, 100 Id. 63, 66; *Atkinson v. Cummins*, 9 How. 479, 486; *Thorington v. Smith*, 8 Wall. 1, 12.

10. Performance may be shown by parol evidence; citing *Stearns v. Hall*, 9 Cush. 31, 34, 35; *Kimball v. Myers*, 21 Mich. 276, 285, 286.

11. Whatever the motive, the objection not being made on the ground of incompetency, the testimony stands as competent; citing 1 Greenl. Ev. § 421; *Perrott v. Shearer*, 17 Mich. 48, 53; *Locke v. Farley*, 41 Id. 405–407; *Levin v. Russell*, 42 N. Y. 251, 255, 256; *Donelson v. Taylor*, 8 Pick. 390, 392.

12. The objection that some of the testimony given by Ripley was

equally within the knowledge of Buckland has no other force than to require such testimony to be disregarded when objected to; citing *Smith's Appeal*, 52 Mich. 415.

13. The refusal to answer on cross-examination only affects so much of the direct testimony as the answer withheld might have qualified; citing *Heath v. Waters*, 40 Mich. 457, 471.

*Wisner & Draper*, for defendant, contended:

1. As to the incompetency of portions of complainant's testimony under the statute, counsel cited *Kimball v. Kimball*, 16 Mich. 211; *Stackable v. Stackable Estate*, 65 Id. 515; *Buffum v. Porter*, 70 Id. 623.

2. By the terms of the so-called "contract," Ripley, before he is entitled to a conveyance of the quarter interest, must pay his proportion of the taxes and expenses attending the keeping of the lands. In his bill he makes no averment of his readiness or willingness or of an offer to do this, nor does he refer to the matter by any evidence put into the case, nor does the decree require him to do this, but simply gives him the land unconditionally; citing Pom. Cont. § 323.

3. The contract, being one for an interest in lands, is void, as it fails to describe the lands in which complainant claims a quarter interest; citing How. Stat. §§ 6179, 6180; and, treated as a declaration of trust, it is equally void for the same reason; citing How. Stat. §§ 5573 (subd. 5), 6179.

4. Trusts in land by parol cannot be created in Michigan; citing *Taylor v. Boardman*, 24 Mich. 302; *Shafter v. Huntington*, 53 Id. 310.

5. That his contract is void under the statute of frauds cannot be doubted; citing *Raub v. Smith*, 61 Mich. 543; *Brosnan v. McKee*, 63 Id. 454; *Yerkes v. Perrin Estate*, 71 Id. 567.

6. As to the admissibility of parol evidence, see 1 Greenl. Ev. § 268; *Cook v. Barr*, 44 N. Y. 156; *Gault v. Stormont*, 51 Mich. 636; *Webster v. Brown*, 67 Id. 328; *Johnson v. Buck*, 35 N. J. Law, 338 (10 Amer. Rep. 243); *O'Donnell v. Leeman*, 43 Me. 158; *Hurley v. Brown*, 98 Mass. 545; *Scanlan v. Geddes*, 112 Id. 15; *Doherty v. Hill*, 144 Mass. 465 (11 N. E. Rep. 581); *Wright v. Weeks*, 25 N. Y. 153; *Brodie v. St. Paul*, 1 Ves. 326; *Ridgway v. Ingram*, 50 Ind. 145; *Palmer v. Albee*, 50 Iowa, 429; *Tice v. Freeman*, 30 Minn. 389 (15 N. W. Rep. 674); *Jordan v. Fay*, 40 Me. 130.

7. That this writing is void for want of sufficient description, see Pom. Cont. § 152; *Eggleston v. Wagner*, 46 Mich. 610; *Beekman v. Fletcher*, 48 Id. 555; *Tice v. Freeman*, 30 Minn. 389;

*Brockway v. Frost,* 40 Id. 155 (41 N. W. Rep. 411); *Taylor v. Allen,* Id. 433 (42 N. W. Rep. 292); *Mellon v. Davison,* 123 Penn. St. 298 (16 Atl. Rep. 431); *Wilstach v. Heyd,* 122 Ind. 574 (23 N. E. Rep. 963); *Jordan v. Fay,* 40 Me. 130; *Hamilton v. Harvey,* 121 Ill. 469 (13 N. E. Rep. 210).

B. Complainant's long and unexplained delay in bringing his suit is fatal to his right to relief, even if originally perfect; citing *Bruce v. Tilson,* 25 N. Y. 194; *Peters v. Delaplaine,* 49 Id. 367; *Campau v. Van Dyke,* 15 Mich. 371; *Loomis v. Brush,* 36 Id. 41; *Zoellner v. Zoellner,* 46 Id. 511; *Allen v. Allen,* 47 Id. 74; *Haff v. Haff,* 54 Id. 511; *Bangs v. Stephenson,* 63 Id. 661; *Day v. Cole,* 65 Id. 154; *Combs v. Scott,* 76 Wis. 662 (45 N. W. Rep. 532); *Van Houten v. Van Winkle,* 46 N. J. Eq. 380 (20 Atl. Rep. 34); *Wilkinson v. Sherman,* 45 Id. 413 (18 Atl. Rep. 228); *Larison v. Polhemus* (N. J.), 5 Atl. Rep. 129; *McCartin v. Traphagen,* 43 N. J. Eq. 323 (11 Atl. Rep. 156).

CHAMPLIN, C. J. This suit is brought to enforce a trust under a contract of date May 9, 1870, made between the complainant and Don C. Buckland, and which is in the following terms:

"This agreement, made this ninth day of May in the year of our Lord one thousand eight hundred and seventy, by and between Marcus T. Ripley, of Pontiac, the party of the first part, and Don C. Buckland, of Pontiac, State of Michigan, of the second part, witnesseth:

"Whereas, the said first party has the minutes of a large amount of pine lands on the Upper Peninsula of Michigan, and said second party is desirious of locating a portion of said land on shares:

"It is hereby agreed that said first party, for and in consideration of sufficient money and land-warrants to locate from five to ten thousand acres of said land, and in consideration of a one-fourth part of said land when located, agrees to select from said minutes from five to ten thousand acres of the best pine land, and locate the same in the name of Don C. Buckland, as soon as said second party shall furnish him the money and land-warrants to locate said land.

"And said second party hereby agrees to furnish said first party sufficient money and land-warrants to locate from five to ten thousand acres of said land; and said second party hereby agrees to give said first party an undivided one-fourth part of all lands selected by said

first party, and taken or located in the name of Don C. Buckland.

"Said first party agrees to look after the land, and attend to lumbering it or selling it, as the parties may agree. Said second party agrees to furnish the money to pay the expenses and taxes.

"M. T. RIPLEY.
"D. C. BUCKLAND."

The bill of complaint states that—

In pursuance of this contract the complainant selected from the minutes of land which he then had the descriptions contained in the third paragraph of the bill of complaint, which appear on pages three and four of the record, and located the lands; that the location was made in the name of Don C. Buckland, in May and June, 1870; that patents were afterwards issued for the lands to Don C. Buckland.

That on the 1st day of November, 1880, Don C. Buckland and wife, upon the recited consideration of one dollar and of love and affection, quitclaimed the whole or a portion of said lands to May E. Seligman, wife of the defendant and daughter of Don C. Buckland; that afterwards, on the 10th day of May, 1881, May E. Seligman, upon the recited consideration of one dollar and of love and affection, made a conveyance of said lands to the defendant, Jacob Seligman; that afterwards, and on the 24th day of October, 1885, Don C. Buckland and his wife, upon the recited consideration of one dollar, quitclaimed to the defendant certain specified descriptions of land, being the same lands, in whole or in part, which were intended by Buckland to be contained in the deed to his wife, May E. Seligman, which deed contains the following:

"This deed is made to convey the above descriptions, which were omitted by error in deed dated November 1, 1880, executed by D. C. Buckland and Sarah A. Buckland, his wife, to May E. Seligman."

The bill further sets up that Don. C. Buckland died in the month of September, 1888, leaving a last will, which was probated in the probate court of Oakland county on the 15th day of October, 1888; that he left surviving him his widow, who was made executrix of the will, and she, after the death of her husband, executed a

conveyance of said lands to said Jacob Seligman; that by
the conveyance made by Don C. Buckland to his daughter,
and through his conveyance to Jacob Seligman, and by
means of the will and conveyance made as aforesaid to
Jacob Seligman, and the conveyance made by May E.
Seligman to Jacob Seligman, the title to all of said lands
has become vested in and is held by the said Jacob
Seligman.

Complainant charges that Seligman took the convey-
ances with notice of his rights in the undivided one-
quarter of the lands; that the conveyances were made
without his assent, and that Jacob Seligman holds the
lands in trust for the complainant; that he has requested
Seligman to execute to him a deed of the undivided
quarter of the lands mentioned in the bill, and he has
refused to do so.

He prays that a decree may be made declaring him the
equitable owner of and entitled to an undivided one-
quarter of the lands described in his bill, and that such
undivided one-quarter of said lands is held in trust by
Seligman for the complainant, and that said trust be
declared and established, and Seligman decreed to convey
the undivided quarter of the lands to complainant, or
that the whole lands be sold, and the proceeds divided,
if that shall be for the greater mutual advantage of the
complainant and Seligman.

The defendant, Jacob Seligman, answered the bill of
complaint, in which he denied all knowledge of the agree-
ment set forth, and says—

That for more than 15 years past preceding the death
of said Buckland he was on intimate terms with him,
both socially and in business matters; that they transacted
a very large amount of business together, relating to pine
lands in the Upper Peninsula of Michigan, and in all his
dealings and intercourse with him he never heard that
any such agreement was outstanding, or that complainant
had any interest in any of the lands described in the
bill, and says that whatever interest complainant had in
such lands originally was fully settled for and adjusted
between the complainant and Buckland many years before
Buckland died; that complainant knew that Buckland
had deeded an undivided interest in said lands to May
E. Seligman, the defendant's wife, but at no time prior

to Buckland's death did he claim or intimate to defendant or to May E. Seligman that he had any interest in any of said lands, notwithstanding he saw the defendant several times a year for a good many years before Buckland died. That in November, 1880, Buckland sold and conveyed to the defendant's wife, May E. Seligman, an undivided half of said lands, on consideration that she would pay the taxes on all of them for the future; that the defendant, for her, has ever since the year 1880 paid the taxes, amounting to upwards of $4,000; that the wife of defendant was a *bona fide* purchaser of the half of said lands, and at no time until after the death of her father did she know or hear of the complainant's having or claiming to have any interest in any of said lands; that the deed to her was recorded January 24, 1884; that on the 26th of January, 1884, she conveyed an undivided half of said lands to defendant, in consideration of the taxes he had paid thereon, and to enable him to handle and dispose of said lands; but at the time he paid such taxes, and at the time he received said deed, and at no time since, until after the death of Buckland, did he know or hear in any way that the complainant claimed an interest in any of said lands.

That, after Buckland had so deeded an undivided half of said lands to his daughter, he remained owner of the other undivided one-half, and by his last will and testament he devised that half to his wife; that he died in September, 1888; that his will was probated, and on the 8th day of November, 1888, defendant purchased of Sarah A. Buckland, the wife of said D. C. Buckland, the other undivided one-half of said land, paying therefor upwards of $15,000, and at the time he so purchased and paid he did not know or have any notice, nor did he even hear, that complainant claimed any interest in said lands, and he denies that he has any.

The defendant submits that he is a *bona fide* purchaser of said lands, and holds the same free from any right of complainant thereto by reason of anything contained in said contract, even if said complainant and said Buckland had not discharged and adjusted the matter long ago; and he claims that whatever rights and interests complainant may have had in such lands, if any, at some time prior to the death of Buckland, he cannot now at this late day assert any claim thereto as against the defendant, but must be left to his remedy, if he has any,

against the estate of said Buckland, which is entirely
solvent; that the long and unexplained laches and delay
on the part of the complainant in claiming any interest
in said lands or in asserting the same during the life-
time of said Buckland is a complete answer to the claim
that said complainant has now made; and defendant asks
and claims the benefit of the statute of limitations, the
same as if he had formally pleaded the same.

The testimony was taken before commissioner, and
upon the hearing the court below granted the relief
prayed for by the bill.

Upon the hearing of the appeal in this Court, the
counsel for the defendant insisted that the first step to
be taken was to strike from the record all testimony
given by the complainant, as a witness in his own behalf,
which, if true, must have been equally within the knowl-
edge of Don C. Buckland, deceased, in his life-time.
We fully agree with counsel for defendant, and have laid
aside entirely the testimony of the complainant as to all
matters which, if true, must have been equally within
the knowledge of Mr. Buckland, unless its admission has
been waived by defendant.

It is claimed by counsel for the complainant that in
several instances defendant has waived the prohibition of
the statute by not objecting to the introduction of testi-
mony. While we have held that the representatives of
deceased persons could not be permitted to waive the
statute,[1] the same reasons do not apply to those who do
not occupy that position. Here the defendant represents
his own interest, and it is competent for him to waive
the provisions of the statute with reference to testimony
which would affect his interest. He is entitled to the
benefit of the statute, if at all, through the provisions
extending it to the assigns of deceased persons. As
originally enacted, the statute was confined to suits or

---

[1] See *McHugh v. Dowd Estate*, 86 Mich. 412.

proceedings prosecuted or defended by the representatives. of a deceased person or by any surviving partner. Act No. 125, Laws of 1861; Act No. 188, Laws of 1863. By the amendment of 1875 (Act No. 155) the statute was extended so as to include heirs, assigns, devisees, and legatees, and it so remains at the present time. The word "assigns" is used here in its legal sense, and signifies a person to whom any property or right is transferred by a deceased person in his life-time. The statute is broad enough to cover successive transfers, or where the controversy depends upon the acts or dealings with the property of the deceased in his life-time; and any one who is called upon to prosecute or defend some interest which is affected by the act or agreement of the deceased party through whom he claims may invoke the protection of the statute to shield his interest from the testimony of the opposite party to matters which, if true, were equally within the knowledge of the deceased person through whom he claims.

In *Twiss v. George*, 33 Mich. 253, it was said that the prohibition did not extend to controversies with third persons acting in their own right as purchasers during the life-time of the deceased, and not taking by *post mortem* estate. This case, although decided after the amendment of the statute of 1875 took effect, arose under the statute as it read before, and cannot be taken as an exposition of the present law. Seligman is the transferee of the decedent, of the assign of the decedent, and of the devisee of the decedent, as is shown by his respective title deeds; and although the estate of Buckland cannot he held liable to him, for the reason that he took only such estate as his grantors had by his quitclaim deed, yet the complainant is seeking to charge him, as the representative of Buckland, with the same trust which he alleges Buckland assumed; and the case should be governed

in all respects, if he is chargeable at all, as Buckland would be had the suit been against him in his life-time. Hence all testimony given by Ripley in his own behalf, of matters which, if true, were equally within the knowledge of Buckland, was not admissible, and must be stricken out. This will include all personal interviews between Ripley and Buckland, all *memoranda* of conversations between Ripley and Buckland, all money transactions he had with him, as to letting him have the minutes of the land, as to working for Buckland on the Au Sable river, and as to Buckland's handwriting.

In applying this statute, care should be observed in distinguishing between matters equally within the knowledge of the deceased and matters within his information; that is, to distinguish what is knowledge and what is hearsay. It is only as to matters within the knowledge of the deceased that the opposite party is not permitted to testify. This is illustrated in *Wheeler v. Arnold*, 30 Mich. 304, 308, where it was said that—

"Most of the facts sought to be introduced by his testimony related to what was done in the absence of the deceased, including the forwarding or removal of property destined for his use, he being in Texas, and the transactions being confined to occurrences in Michigan, and on the way between the two states. Some testimony referred to the value of property and transportation. These matters could not, for the most part, be known to deceased at all, and his only information must have been hearsay. It is not, therefore, necessary to go into any examination of the statute, which can not possibly apply to such facts."

This principle applies to the testimony of Ripley with reference to his acts in purchasing warrants and scrip to enter the land at Marquette and Lansing. Buckland had no personal knowledge of these matters. He was not present. These are distinct facts, which it was just as competent for Ripley to testify about as that the United

States Land Office is located at Marquette, and the seat of the State government at Lansing. A report of the lands located, made by Ripley to and received by Buckland, is not admissible. The statement of Ripley that he selected these lands from his lists, went to Fisher, Booth & Co., and selected warrants and scrip, was admissible, but the statement that Mr. Buckland settled for them is stricken out; also is that part of his testimony where he states that Buckland paid for the warrants and scrip, and settled with the bank for them; also the statement that he had Mr. Buckland send a letter, which he wrote, to the State Land Office at Lansing. The testimony of *memoranda* made by Ripley, introduced in his own behalf, is eliminated, as well as the testimony introduced on the part of the defendant to the effect that the witness had heard Mr. Buckland say that he and Ripley had settled all their pine-land affairs. The testimony of Ripley with reference to his money transactions with Buckland is stricken out.

We see no impropriety in the refusal of Ripley to answer some questions relative to the agreement he made, if any, concerning the prosecution of the suit.[1]

At first I was inclined to think that it was not competent for Ripley to testify to having seen the patents of the lands which he had entered, while at Buckland's house, showing them to have been in his possession; but upon more careful consideration of what was said by this Court in *Wright v. Wilson*, 17 Mich. 201, I am inclined to think that the statute was not intended to exclude testimony concerning facts capable of proof by document-

---

[1] Complainant was asked on cross-examination if he had made any arrangement of any kind with any person to carry on this suit for a share of what he might recover, or by which any other person than himself should pay the whole or any part of the expenses of the litigation, which inquiries were objected to as immaterial and irrelevant, and under the instructions of his counsel the witness declined to answer.

ary evidence which is accessible to both parties, as, for
instance, the dates or contents of instruments in writing
of a public character, where such testimony is not
excluded under other rules for the admission of testi-
mony. The patents were public records, and their exist-
ence and contents could have been proved from certified
copies from the archives of the departments at Washing-
ton and Lansing. The fact is not denied that Buckland
was the patentee, and, the fact being proved by com-
petent testimony that the agreement was made as alleged,
that the lands were selected and located and the patents
issued in Buckland's name, the inference is conclusive
that the patents were issued under and in accordance
with the agreement set out, and competent testimony in
the case establishes this.

The first question involving the merits is whether the
writing of date May 9, 1870, is void under sections 6179
and 6180 of Howell's Statutes. These sections read as
follows:

"Sec. 6179. No estate or interest in lands, other than
leases for a term not exceeding one year, nor any trust
or power over or concerning lands, or in any manner
relating · thereto, shall hereafter be created, granted,
assigned, surrendered, or declared, unless by act or
operation of law, or by a deed or conveyance in writing,
subscribed by the party creating, granting, assigning,
surrendering, or declaring the same, or by some person
thereunto by him lawfully authorized by writing.

"Sec. 6180. The preceding section shall not be con-
strued to affect in any manner the power of a testator
in the disposition of his real estate by a last will and
testament, nor to prevent any trust from arising or being
extinguished by implication or operation of law."

The reason claimed by the defendant for the agreement
being void is:

"This instrument of May 9 entirely fails to describe
the lands which are the subject-matter of the trust, and

in no possible way can the lands be ascertained, either from this instrument or from any other referred to in or by it. It is only by the aid of parol evidence (and that, too, from a witness disqualified from testifying by reason of the death of the so-called 'trustee') that the lands referred to could be ascertained. As we understand the law, parol evidence cannot be allowed. Trusts in lands by parol cannot be created in Michigan."

This contract does not declare a trust. There is no express trust. Upon its face it has simply the elements of an executory contract. The complainant claims it has been executed on his part, and upon Buckland's part so far as he received the patents in his own name, and out of these arises the trust in his favor by implication of law. The trust which the law implies is that, having agreed that the title of the lands selected and located shall be taken in Don C. Buckland's name, and he having agreed to give to Ripley an undivided one-fourth of all the lands selected, taken, and located in his name, it was his duty to convey an undivided one-fourth to Ripley, and until he does so the law implies that he holds the title to such undivided one-fourth in trust for Ripley. 1 Perry, Trusts, §§ 82, 112, 122. It is claimed, and the proof shows, that the contract was fully performed in Buckland's life-time, except as to giving, or, which is equivalent, conveying, an undivided one-fourth of the lands to Ripley. This being so, it is useless to speculate upon what would have been the respective rights of the parties had either party refused to carry out his part of the agreement. Had Ripley selected the lands, and Buckland had refused to go further and furnish the money, Ripley might not have been able to compel a specific performance, or, if Ripley had refused to select, Buckland might not have been able to compel a specific performance; but either party would have had

89 MICH.—13.

a remedy at law for damages for non-performance of the contract. *McCreery v. Green*, 38 Mich. 172. Implied and resulting trusts are expressly saved by our statutes, except in cases arising under section 5569 of Howell's Statutes. See, also, sections 5568 and 6180. The latter section declares that the preceding section shall not be construed to affect in any manner the power of a testator in the disposition of his real estate by last will and testament, nor to prevent any trust from arising or being extinguished by implication or operation of law. Section 5572 declares that—

"No implied or resulting trust shall be alleged or established to defeat or prejudice the title of a purchaser for a valuable consideration, and without notice of such trust."

In construing the language of the statutes together, implied or resulting trusts may be established by proving the transaction out of which they result or are implied, and such proof may be by parol testimony. See, also, 1 Perry, Trusts, §§ 137, 139.

The next question to be considered is whether defendant is a *bona fide* purchaser, for, if he is, the statute declares that no implied or resulting trust shall be alleged or established to defeat the title of a purchaser for a valuable consideration, and without notice of such trust. The burden of showing that defendant is a *bona fide* purchaser without notice rests upon him. The sources of his title have already been mentioned. The deed from Mr. Buckland to his daughter was by quitclaim, and in consideration of one dollar and of love and affection. The considerations recited in deeds are not sufficient evidence to show the consideration upon which a party can rely when he has the burden of proving that the consideration paid was valuable in a suit between the

grantee and third persons. It is, moreover, contended that Seligman, having acquired title by quitclaim deed, is not entitled to rely upon the claim that he is a purchaser for value without notice of the trust, under the decision in the case of *Peters v. Cartier*, 80 Mich. 124. It may be remarked, however, that the case of *Peters v. Cartier* arose under the recording laws, and is, therefore, authority only in cases arising under such laws. The recording laws are not involved here, nor are they involved in section 5572, above quoted; and I think it was competent for the defendant, if he could, to show that he was a purchaser for a valuable consideration and without notice of the trust.

The conveyance from Buckland to his daughter appears to have been voluntary, and she must be held to have taken it subject to the trust which by implication of law attached to it in the hands of Buckland. We have duly considered the position taken by defendant's counsel with reference to the clause conditioned for the payment of the taxes, and we consider that as a condition subsequent, and not as the valuable consideration referred to in the statute.[1] The conveyance from Mrs. Seligman to her husband was likewise voluntary, and the subject of the trust in his hands. The devise to Mrs. Buckland gave her no greater rights than Buckland had. She was not a *bona fide* purchaser for a valuable consideration. *Burns v. Berry*, 42 Mich. 176. Defendant claims to have purchased from her for a valuable consideration without notice. He testified that he paid Mrs. Buckland $30,000 for her interest, and the witness Emerick testified to the

---

[1] The clause referred to is found in the quitclaim deed from Buckland and wife to their daughter, May E. Seligman, and reads as follows: "This conveyance is made, however, upon the express conditions that the said party of the second part shall pay or cause to be paid, in due season, the whole amount of all taxes assessed upon the whole of the above-described lands," excepting those lying in certain designated townships.

same thing. Emerick's testimony is not very satisfactory when read in the light of his cross-examination; and defendant's testimony is not entirely consistent with his answer, in that he states therein that he paid Mrs. Buckland upwards of $15,000. One would hardly suppose that upwards of $15,000 signifies the same thing as $30,000; and·yet the greater sum would include the less, and if he gave her $15,000 it would be a valuable consideration. The difficulty with me, in reference to this purchase, is to determine whether Seligman, at the time of the purchase, had notice of Ripley's rights under the contract. Upon this the testimony is conflicting, and the circuit judge must have determined the weight of evidence to have been with the complainant; and it does not so clearly preponderate in defendant's favor as to convince us that the circuit judge was wrong, and therefore we are inclined to·hold that Seligman was not ignorant of Ripley's rights when he purchased.

We now come to the question of complainant's laches. Lapse of time alone is not sufficient to bar equitable relief. This is illustrated by several cases cited by counsel for the complainant. The term "laches" involves the idea of negligence,—a neglect or failure to do what ought to be done under the circumstances to protect the rights of the·parties to whom it is imputed, or involving injury to the opposite.party through such neglect to. assert rights within a reasonable time. In applying the principle of laches to Ripley we must consider what the object of the contract was, and whether there was anything in the nature of the circumstances which called upon him to act within any particular time. The contract had been so far executed as to secure the lands and place the whole title in Buckland. The agreement is silent as to the time when Buckland should give to Ripley a deed of an undivided quarter. It was his duty

to give the deed on demand or within a reasonable time. The duty of acting was Buckland's. If Ripley did not choose to call upon Buckland to perform, he alone ran the risk of the betrayal of confidence by sale of the whole land to an innocent purchaser; or did Buckland's neglect to deed make it negligence in Ripley to delay? On the other hand, Ripley says it was not intended to sell the lands at once, but to hold them for a future rise in value. Why, then, should he not at once call for his deed, and thus avoid the risk of Buckland's death or his own, or of Buckland's repudiation of the trust? Would prudent men have been guilty of so long a delay?

Letters and postals were introduced, all of them bearing date after the patents were in Buckland's hands and Ripley was entitled to his one-fourth interest. The first was written at Detroit, May 29, 1872:

"DETROIT, MICH., May 29, 1872.
"M. RIPLEY, ESQ.,—

"Dear Sir: I have heard for the last three weeks that you were back, and have tried to find you, but could not. Now, I want to see you very much. I have not taken those lands, because I dare not, from what I heard, etc.; and I thought you acted very strange towards me. I have endeavored to befriend you in every way, and you seem to shun me. If there is anything wrong, I wish to know it at once. I thought if you went to the woods you would find something, and I would help you to save it; but you seem to give me a wide berth. Please call or write me the next 6 days to N. Y., Astor House.
"Yours truly,
"D. C. BUCKLAND."

It is not shown what reply Ripley made to this letter. If, as Buckland seemed to think, Ripley appeared to shun him, what would have been more natural than for him to request Buckland to deed according to the contract? Buckland tells him what he thought he would do for him if he went into the woods, but does not mention what he had already done for him. We must read that

letter in the light of what we are satisfied are the facts
that existed at the time, namely, that they had just
closed a deal by which Buckland held the title to a large
quantity of land, of which Ripley was entitled to a deed
of an undivided quarter, and yet no allusion is made to
it. Would not Ripley have regarded it as a strange cir-
cumstance, and grown more suspicious of him? Yet at
that time the parties had other dealings with each other.
Buckland then held three notes against Ripley,—one for
$200, one for $740.20, and one for $1,000, all long past
due. A postal-card, written August 15, 1876, to Mr.
Galloway, says:

*"Dear Sir:* Yours received. Mr. Ripley has just gone
up to the 'Soo.' If you go up you will find out from
his brother where Mark Ripley is. He knows all my
lands. He located them. If you want to buy, you
better come down here.

"D. C. BUCKLAND."

On April 3, 1877, the parties met, and in some way
Ripley paid the $1,000 note, and on that day gave to
Buckland the following receipt:

"Rec'd of D. C. Buckland one dollar, in full settle-
ment for all acc'ts for expenses in looking lands to date,
having settled with him this day in full, and executed to
him my note for $1,636.94, for borrowed money.

"M. T. RIPLEY.

*"Pontiac, April 3, 1877."*

This receipt, as originally drafted, was "in full settle-
ment of all acc'ts for expenses in looking lands and all
other matters to date;" and as it now appears the words
"and all other matters" are canceled by a line being
drawn through them. After the date of that receipt we
have communications by way of postal-cards, introduced
in evidence by complainant, as follows:

"PONTIAC, Sept. 14, 1878.
*"Dear Sir:* Why don't you write me about my matters

up there? If you can do anything, please say so; and, if not, say so. I rec'd a letter from Mathews & Longyear, of Marquette, wanting the agency of my lands. What do you think of them? They say they can sell.

"D. C. BUCKLAND."

"PONTIAC, Sept. 16, 1878.
"What is the reason you do not answer my letters? I have written 3 on business, and no answer. Unless I hear from you soon, I must come up there, for I must get my matters in shape at once. Please write me fully on rec't of this.

"D. C. BUCKLAND."

"PONTIAC, Sept. 27, 1878.
"*D'r Sir:* Unless I can hear from you immediately, I must come up there. I must have my matters fixed up. Why don't you answer some of my letters? Are you coming down soon? Please write at once. I wrote Mr. Seymour about cutting timber on my land.

"D. C. BUCKLAND."

The foregoing postal-cards were all addressed to "M. T. Ripley, Esq., Sault Ste. Marie, Mich."

"PONTIAC, Dec. 7.
"Come to Pontiac Saturday,—to-morrow,—and I will be at home.

"D. C. BUCKLAND."

This postal, and the one following, were addressed to Ripley at Detroit.

"PONTIAC, April 8.
"*D'r Sir:* I have been trying to find you, and wish to see you before you go up the lakes. Write me when I can see you in Detroit, and I will come in. Yours,

"D. C. BUCKLAND."

There is a date on the face of this card, 1879.

In November, 1880, Buckland conveyed to his daughter an undivided half of this land, which deed was not recorded until January 24, 1884. In looking over all the exhibits since the date of the contract, I find none which recognizes the fact or mentions an existing interest in the land as belonging to Ripley. Buckland speaks of it

as his land.   Whether he refers to this exclusively, or to
other, which the testimony shows he owned in the
vicinity of this, does not appear.   The deed to May E.
Seligman embraces a large amount of lands other than
those which complainant claims an interest in; but
granting, as we must, I think, that the exhibits refer to
these lands,—for this view would be most strongly against
the complainant,—we are to consider whether they show
acquiescence in the claim made by the defendant that
Ripley, if he ever had an interest, had abandoned it, and
all claim to it.   Lapse of time, though not a sufficient
prohibition to constitute a statutory bar, may, if cir-
cumstances warrant, so operate by way of evidence as to
create a presumption that the parties have waived or
abandoned their rights; and in this connection the fact
that during the delay one of the parties died should
have its proper bearing.   There is no competent evidence
that Buckland ever denied the rights of Ripley under
the contract; there is none that he ever repudiated the
trust; and, looking to his acts and dealings with the
land, we see that by a deed dated in 1880 he conveyed
an undivided half to his daughter.   This was not placed
upon record until 1884.   From this time it was construct-
ive notice to Ripley, but that act did not in any way
militate against the trust.   He could still have deeded
to Ripley an undivided quarter.   Consequently this act
cannot be regarded as of any significance as showing a
design to repudiate the contract, or as ending his trust
relations with Ripley.   Complainant was not then called
upon to assert his claim by reason of that act of Buck-
land.   The devise of the remaining undivided half to
his wife was a direct repudiation of his trust, but this
did not take effect until his death, and was an act of
which Ripley had no previous notice.

Complainant's delay to bring suit until after the

decease of Buckland was not, in and of itself, such laches, when viewed in the light of the object and purposes of the contract, as to create a presumption that he had abandoned his rights under it. No sale had been made by the agreement of the parties. The land had not been lumbered by mutual agreement. It was becoming more valuable year by year until the time of Buckland's death, as may be inferred from the testimony of the defendant, who says he paid to Mrs. Buckland $30,000 for the undivided half after the death of Buckland, from which we may conclude that the whole tract was at that time worth $60,000. The rise in value was what the parties contemplated when they entered into the contract and located the land at government price. Should this delay and Buckland's death preclude the relief sought? Has testimony been lost to the defendant by the delay? It is possible that Buckland would have denied that Ripley ever had any interest in the land, or, if he had, that it had been relinquished and surrendered; but verbal denial would not have sufficed. The written contract, executed as it was, created an equitable interest in the land which was vested in Ripley, and this could not be released or surrendered except by writing signed by him, or by the act or operation of law. How. Stat. § 6179; *Seligman v. Ten Eyck Estate,* 60 Mich. 267; *Whiting v. Butler,* 29 Id. 122; *McEwan v. Ortman,* 34 Id. 325. No such written evidence was produced. It is not seen how the death of Buckland prejudiced the defendant. It rather operated to the disadvantage of the complainant, in excluding testimony which he cannot now give, by reason of Buckland's death.

The testimony shows that Ripley made efforts to sell the land during the year 1887, which was prior to Buckland's death, and had interviews with defendant respecting such sale, and also advised with attorneys respecting

the bringing of a suit against Buckland to enforce his rights under the contract. In view of all the circumstances, we think complainant ought not to be debarred from relief on the ground of laches.

Upon one point we think the decree of the court below was wrong. The contract contains this clause:

"Said second party agrees to furnish the money to pay the expenses and taxes."

This agreement to furnish money to pay taxes and expenses was no part of the consideration moving to Ripley. The contract is clear upon what the consideration was. It says:

"In consideration of a one-fourth part of said land, when located, agrees to select," etc.

The agreement to furnish the money to pay the taxes was for the benefit of both parties. If Buckland had immediately conveyed to Ripley an undivided one-fourth of the land located, he would have been liable to pay one-fourth of the taxes. Equity regards that as done which should have been done, and we think he should bear his proportion of the taxes paid. The decree must be so modified, and, as modified, affirmed. If the parties cannot agree upon the amount, the cause must be referred to a commissioner to take an account of the taxes paid, and upon the coming in of the report a final decree will be entered that, upon the payment of one-fourth of the taxes, the defendant execute a conveyance in accordance with the decree made by the court below. No costs will be allowed to either party in this Court.

McGRATH, LONG, and GRANT, JJ., concurred.

MORSE, J. (*dissenting*). If all the testimony of complainant to matters and things which must have been equally within the knowledge of Buckland were eliminated

from this case, there would be left nothing in support of his claim, except the existence in his hands of the contract of date May 9, 1870. This contract evidently contemplated that complainant would be entitled to demand and receive the evidence of his one-fourth interest in the lands selected under it as soon as they were located. As soon as the lands were patented to Buckland, complainant was entitled to a deed of a quarter interest in them. Buckland died in September, 1888, solemnly declaring in his last will and testament that he was the sole owner of an undivided one-half of the lands now claimed to be the lands located by the complainant under his contract. The other half Buckland had conveyed to his daughter, wife of the defendant, in 1880; and in 1881 she deeded the same to defendant. The interest in these lands standing in Buckland when he died was devised by him to his widow, who subsequently, for a valuable consideration, in November, 1888, conveyed the same to defendant. After waiting nearly 20 years from the time he was entitled to an enforcement of this contract, complainant files the bill in this cause, praying that he may be declared the equitable owner of one-quarter of a large lot of lands, and that the defendant may be compelled to convey to him such interest. As a majority of the Court are in favor of giving relief to complainant, I do not think it necessary to review the evidence in the case, but will briefly state my reasons for dissenting from such conclusion.

1. This is a stale claim. One of the parties, and nearly every person mentioned by Ripley as having knowledge of the transaction, is dead. Those who are alive, when produced upon the stand, have forgotten all about it, if they ever had any knowledge that would be of use in determining the truth of the controversy. Equity does not look with favor upon such claims. In

such a case the court ought to be well satisfied from what proofs are obtainable that the complainant is entitled to relief. I am not so satisfied. While Buckland was alive, what correspondence can now be found between the parties tends to show that not only was Ripley making no claims to these lands, but that he was taking no interest in them whatever, and would not even answer the letters of inquiry of Buckland in relation to them.

2. If Ripley ever located these lands under the contract, of which I am not satisfied, it is quite evident to me that the contract was canceled by the subsequent action of the parties long before Buckland's death, and even before the one-half interest was deeded to Mrs. Seligman. In 1877, Ripley and Buckland had a settlement,—at least of some of their matters,—and Ripley gave his note to Buckland for borrowed money. After the time of this settlement Ripley took no further interest in these lands. Although Buckland frequently wrote to him asking for information about them, these letters were never even replied to. This correspondence was put in the case by Ripley, but it indicates, if it shows anything, that Buckland then understood the lands to be his absolutely. Mrs. Buckland testifies that at one time, and after this settlement, while Ripley was at her husband's house in Pontiac, Buckland accused Ripley of not returning a paper, as he agreed, to him, and called him a liar; but she cannot remember anything as to the nature of the paper. This paper may have been the very contract upon which complainant is prosecuting this suit. It is said that this contract, executed as it was, created an equitable interest in the lands which vested in Ripley, and this could not be released or surrendered except by writing signed by him, or by the act or operation of law. But it must be remembered that equity will consider that done which ought to have been done. If Ripley settled

with Buckland in 1877, and agreed to cancel this contract, he cannot be allowed, in a court of conscience, to come in, 13 years afterwards, and when Buckland is dead, and escape this agreement, and take from Buckland's heirs $20,000 and upwards, upon the technical plea that he ought to have canceled his contract in writing, but did not do so. Courts of equity are not established that parties may profit by their own wrong in this manner.

3. I do not think that the burden of proof is upon Seligman to show that he is a good-faith purchaser of these lands. No fraud on Buckland's part has been shown by the complainant. This whole controversy, if Ripley is right, has grown out of his own neglect and laches. He demanded no deed of Buckland. He did not record his contract, or put it in a shape that it could be recorded. He has paid no attention to these lands, or asserted his interest in any way to them, so as to give notice to the world that he had any right in or to them. He had nothing to say when one-half of them was deeded in 1880 to defendant's wife. He made no claim to the executor of Buckland's estate, or to the widow, to whom the balance was devised, before she sold them to Seligman. He did not look after the taxes. He did not try to sell them, and did not answer the letters that Buckland wrote to him about them. In fact, for 15 years and upwards he has treated these lands in everything as if he was a stranger to them. From the testimony of both parties in the record, I think Mr. Seligman entitled to at least equal credit with Ripley as a witness; and Seligman is corroborated by other persons, while Ripley stands alone.

I have seldom, if ever, examined a case showing the inexcusable laches of this one. It is said that this delay, on account of Buckland's death, puts the complainant at a greater disadvantage than it does the defendant. I

cannot so regard it. If Mr. Buckland were alive, we should have all the facts on his side as well as Ripley's, and I am satisfied there could be no disagreement as to the rights of the parties in such a case. This is but another instance of cases appearing in the court at every term of old and stale demands prosecuted against the estates or heirs of dead men. The law wisely forbids that, after waiting until the death of a person, a claimant shall be permitted to open his mouth as to facts equally within the knowledge of the deceased. Apply that wise rule in this case, and complainant is out of court for want of proof, as he ought to be on account of his laches, if for want of no other reason.

I cannot concur in all that the Chief Justice has said in relation to what matters Ripley was entitled to give evidence. It was not competent for Ripley to testify that he saw the patents of these lands at Buckland's house, in his possession. This was not proving the existence of the documents; there was a better and proper way of showing that. It was evidence calculated to show that they were shown to him because he had some interest in them, and that was the evident purpose of it. One remarkable thing about Ripley's evidence is that whenever he testifies that he had a conversation about these lands with Buckland or Seligman he supports it by a convenient memorandum of it, which he claims he would make as soon as he got out of sight and hearing of the parties with whom he talked, and that he made it with reference to using it in the future. This does not tend at all to strengthen Mr. Ripley as a witness in my estimation, and such memorandum could not be legally admitted in evidence.

I think complainant's bill should be dismissed.