# Charles H. Lafferty, Appellant, *v.* Frank Lafferty and Patrick Lafferty.

*Appeals—Interlocutory order for account—Act of June* 24, 1895—*Practice, S. C.*

Under the act of June 24, 1895, P. L. 243, which allows an appeal from an order to account, an appeal will lie from a decree directing the plaintiff in a bill of equity to account, although he has not prayed for an account from the defendants. The defendants in the bill by their demand upon the plaintiff for an account, which he denied their right to have, are virtually the plaintiffs in the issue thus made up, and the plaintiff in the bill is the defendant in this issue.

*Contract—Partnership—Account.*

Three brothers, as partners, made an arrangement with a railroad company to haul the company's cars in a certain street in a city. The railroad company had a right to terminate the arrangement at any time. The evidence tended to show that the company was dissatisfied with the way in which the work was being done. It notified the brothers to withdraw their teams from the street. Subsequently the company made a new agreement with one of the brothers to do the hauling. *Held,* that the brother who obtained the new contract was not liable to account to his brothers for profits made by him under the new agreement.

*Equity—Costs—Master's fee.*

It seems that the Supreme Court will not reverse a decree reducing the compensation of a master unless the decree is palpably unjust and a clear abuse of the sound discretion which the court below has in such matters.

Argued Jan. 23, 1896. Appeal, No. 191, July T., 1895, by plaintiff, from decree of C. P. No. 3, Phila. Co., Sept. T., 1890, No. 553, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Bill in equity for a receiver.

The case was referred to A. P. Douglass, Esq., as examiner and master, who reported the facts to be as follows :

The late Charles Lafferty, father of the complainant, Charles H. Lafferty, and of the defendants, Patrick and Frank Lafferty, died on the 10th day of October, A. D. 1885.

During the greater part of his lifetime Charles Lafferty— the father—had been engaged in the business of hauling rail-

road cars through the streets of the city of Philadelphia, and had so successfully conducted his business that he thereby accumulated a handsome competency, so that for the last few years of his life he was able to practically retire from active business and to give his time and attention to the management of his estate.

His interest in the parties to this litigation resulted in the partnership between Charles H. Lafferty and his brothers Frank and Patrick, which was based upon a parol contract or verbal privilege with the Pennsylvania Railroad Company, lessees of the Philadelphia, Wilmington & Baltimore Railroad Company, to haul its cars on Washington avenue in the city of Philadelphia.

The testimony is conflicting as to who procured this parol contract from the railroad company, but there can be no doubt that Charles Lafferty, the elder, was known to the railroad company as a responsible man, accustomed to that kind of work from a lifetime of experience; with this knowledge, the railroad company, in the language of the father, reiterated by the sons, gave them "the work."

Charles H. Lafferty was, according to the testimony of Mr. George R. Howell, freight agent of the Pennsylvania Railroad Company, the one with whom the railroad officials dealt, to whom the checks in payment of "the work" were given, and by whom the disbursements were made.

The formation of the partnership appears to have grown out of a desire on the part of the father to retain for his sons the profitable business which he had followed. There were no articles of partnership; there was no limitation of time.

The receipts of the business were deposited in the name of the father and in the father's bank accounts, and payments therefrom made by the plaintiff, Charles H. Lafferty, under power of attorney from his father, and by him only.

That account, it was testified, was not changed until after the death of Charles Lafferty, the father.

Although the commencement of the business in question is not set out in the pleadings, it can be fixed by the testimony of Mr. P. J. Corcoran as commencing on November 1, 1881.

The amount of money necessary to procure the teams, harness, etc., to start "the work" was advanced in different amounts

by the father and two of the sons, Charles H. and Frank Lafferty, and the father's advancement was subsequently repaid him.

No profit was expected by or paid to the father, who in addition to the loan of money practically gave his sons the use of the property occupied as a stable.

The parol contract made in the father's lifetime continued for some years after his death, and was finally terminated October 31, A. D. 1890, by notice sent October 17, A. D. 1890, by William J. Latta, general agent of the Philadelphia, Wilmington & Baltimore Railroad Company, and addressed to Mr. Chas. H. Lafferty, No. 3513, Spring Garden St.

Upon its receipt, Charles H. Lafferty, on the 24th day of October, A. D. 1890, sent notice to Frank Lafferty and a similar one to Patrick Lafferty.

The "work" as conducted for ten years was thereby terminated, but as a controversy arose over the distribution of the assets and the custody of the property, the bill was filed as hereinbefore mentioned, and the receiver disposed of the assets.

Upon the termination of the parol contract, and after the dissolution, it was testified by Mr. Howell that the railroad company made a new and a written contract with Charles H. Lafferty to do its hauling on Washington avenue, and that said contract is now in force.

The master recommended that the claim of Frank Lafferty and Patrick Lafferty to share in profits of the business conducted by Charles H. Lafferty after October 31, 1890, should be disallowed. Frank Lafferty filed the following exceptions to the master's report:

1. The master erred in finding that the controversy turned upon the right of any one partner to dissolve the agreement of partnership at any time.

2. The master erred in deciding that the fact that one partner did dissolve the partnership was not fully decided by the evidence.

3. The master erred in finding that the plaintiff had no confidential relations with the respondents, his partners.

4. The master erred in finding that the cases cited by counsel for the respondents were not applicable to this case.

5. The master erred in finding that the complainant could

not be compelled to further account to the respondents any more than a stranger to them who succeeded in the work of hauling could have been compelled to account.

6. The master erred in awarding to himself the sum of $254.75.

(a) Because the said item is not itemized.

(b) Because it was charged without consultation with the attorneys for this respondent.

(c) Because it is in excess of legal charges and of the work done.

(d) Because the master has negligently failed to file his report until sixteen months after the last meeting before him, notwithstanding the constant protests of the respondents against such delay.

7. The master erred in awarding to himself as examiner an additional fee of $75.00, a fee having already been charged in his account as examiner of $100, which was fully compensatory for his services as such examiner.

8. The master erred in holding that the complainant, Charles H. Lafferty, was not liable to account for the value of the contract which he obtained for himself while a member of the firm of Lafferty Brothers.

9. The master erred in awarding to the complainant, Charles H. Lafferty, the sum of $666.40.

The court sustained the exceptions of Frank Lafferty, and entered the following decree :

1. That the said Charles H. Lafferty shall account to the respondents for the value of the contract with the Pennsylvania Railroad and the value of the expectancy of its renewal.

2. That the cause is hereby referred back to Norris S. Barrett, Esq., as master, to take testimony as to such value and report an amended schedule of distribution of the assets of the late partnership.

3. That the claim of the examiner for $75.00 additional compensation as examiner is disallowed.

4. That the claim of the master for $254.75 as compensation for his services as master is hereby reduced to $50.00.

*Errors assigned* were in sustaining exceptions and entering decree as above.

*Samuel Gustine Thompson,* for appellant.

*James M. Beck,* W. F. *Harrity* with him, for appellee, cited, as to the right of appeal: Gesell's Appeal, 84 Pa. 238; Peoples' Fire Ins. Co. v. Hartshorne, 84 Pa. 453; Citizens' B. & L. Assn. v. Hoagland, 87 Pa. 326; Jones's Appeals, 99 Pa. 124; Schaifer's Estate, 155 Pa. 250; Bradly v. Potts, 155 Pa. 418; Moock v. Conrad, 155 Pa. 586; Palethorp's Estate, 160 Pa. 316; Samuel Cupples Wooden Ware Co. v. Howe, 164 Pa. 85; Long's Estate, 168 Pa. 341; Offerlee v. Reynolds Lumber Co., 36 W. N. C. 540; Act of June 24, 1895, P. L. 243; as to the liability of Charles H. Lafferty to account: Johnson's App., 115 Pa. 129; Lacy v. Hall, 37 Pa. 360; Featherston-haugh v. Fenwick, 17 Vesey, 298; Moody v. Matthews, 7 Vesey, 186; Clegg v. Edmondson, 8 De G. M. & G. 787; Speiss v. Rosswog, 96 N. Y. 651.

OPINION BY MR. JUSTICE McCOLLUM, March 30, 1896:

We are asked to quash this appeal on the ground that the order to account is interlocutory, and that the appeal is not within the act of June 24, 1895, P. L. 243, which allows an appeal from an order to account where an account is demanded by the plaintiff and the right to it is denied by the defendant. There was no prayer by the plaintiff for an account in this case. What he asked for was an injunction restraining the defendants from disposing of the property mentioned in the bill, the appointment of a receiver to take charge of and sell the same under the direction of the court, and a distribution of the proceeds of the sale of it " between plaintiff and defendants according to their respective rights in the same." There does not appear to have been any dispute between the parties, before the master in regard to the distribution of the proceeds of the sale by the receiver of the property mentioned in the bill, but the defendants, alleging that the contract the plaintiff made with the railroad company in November, 1890, was an asset of the partnership, demanded that he account for it as such, and he, insisting that it was not a partnership asset, denied that he was liable to account to them for it. The master sustained the plaintiff's contention but, upon exceptions to his report, the learned court below ordered that the plaintiff account to the defendant " for

the value of the contract with the Pennsylvania Railroad and the .value of the expectancy of its renewal." If the defendants had filed a cross bill for an account for the value of this contract and the plaintiff had denied their right to it, an order upon him to account would have been reviewable on appeal under the act of 1895. Why may not the defendants on whose request for an account the order in question was made, be regarded as in the position of plaintiffs in a cross bill for it? It is to the parties who deny the right to the account that is demanded of them, that the appeal is given. The defendants in the bill, by their demand upon the plaintiff for an account which he denied their right to have, are virtually the plaintiffs in the issue thus made, and the plaintiff in the bill is the defendant in the issue. It would be a narrow construction of the act of 1895, and would defeat the obvious purpose of it, to hold that the right to appeal from an order to account depended upon the form in which the application for it was presented. The appeal in this case is clearly within the spirit of the act, and it seems to us therefore that the motion to quash it should be overruled.

Sometime in the fall of 1881, application was made to the Pennsylvania Railroad Company by Charles Lafferty, Sr., or by his son Charles H. Lafferty, and perhaps by both of them, for the work of handling its cars on Washington avenue. The appellees say that the work was obtained by their father and given to his sons, and the appellant says it was obtained by him individually. It is certain however that the work was done by the Lafferty brothers from the time it was obtained until the company gave them notice to withdraw from it on the 31st day of October, 1890. The notice was dated October 17, 1890, and addressed to Charles H. Lafferty, who communicated it to his brothers. The right of the company to terminate the work in this manner was not disputed. The permission to do it was verbally given to the person or persons who applied for it, and it is conceded by the parties to this litigation that the company could withdraw the permission so given at its pleasure. The arrangement or agreement between the Lafferty brothers respecting the performance of the work was based on this permission and was terminated by the withdrawal of it.

After it was withdrawn all that remained for them to do was to divide the proceeds of the work and their investment in it in

accordance with their agreement. The work they did for the company was its work and they, in doing it, were practically in its service and liable, as we have seen, to dismissal from it at any moment. When therefore the company notified them of its intention " to make other arrangements for the handling of cars on Washington avenue " and " to withdraw their teams from the avenue on and after October 31st, 1890," there would seem to have been no basis for an expectation that the arrangement then existing would be continued or renewed. An expectancy of continuance or renewal that appeared to be groundless would certainly be worthless. The evidence on the hearing before the master tended very strongly to show that the manner in which the work was done by the Lafferty brothers was unsatisfactory to, and the subject of frequent complaint by the company, and that the notice to withdraw from it was the result of dissatisfaction with it.

Under the circumstances of the case we are unable to discover any legal or equitable ground for the order to account. The cases cited to sustain the order cannot be justly likened to the case in hand. They relate to leases which were admittedly partnership assets and to the expectation of renewal incident to them. In this case there was no lease but only a right or privilege to do certain work on certain terms during the pleasure of the party granting it.

In our view of the case Charles H. Lafferty was at liberty on the 1st of November, 1890, to enter into a contract with the Pennsylvania Railroad Company for handling its cars on Washington avenue or elsewhere without incurring thereby any liability to account to his brothers for the value of his contract or for any part of the proceeds of the work done under it. As the master has not appealed from the order or decree reducing his compensation for services we are not called upon to review it. We may say of it, however, that as the learned court below was in a position to know the nature and value of the services, its decree in this respect should not be reversed unless palpably unjust and a clear abuse of the sound discretion the court has in such matters.

The order of June 12, 1895, requiring Charles H. Lafferty to " account to the respondents for the value of the contract with the Pennsylvania Railroad and the value of the expectancy of

its renewal," is reversed at the cost of the appellees, and the record remitted with directions to the court below to enter a decree in accordance with this opinion.

Motion to quash appeal.

OPINION BY MR. JUSTICE MCCOLLUM, March 30, 1896 :
For the reasons stated in opinion filed herewith, supra, p. 540, the motion to quash the appeal is overruled.