8041

EDWARDS v. JOHNSON.

1. PARTNERSHIP—ACCOUNTING.—An agreement that certain parties should each contribute to the expenses of a joint enterprise to sell certain lands and divide the profit in stipulated proportions constitutes a partnership.

There being no stipulation in the agreement when the partnership should end, it is held that it was intended to continue until the partnership enterprise should be completed or until it became obvious it could not be consummated, or that it was a copartnership at will to be dissolved on notice from either member.

Where one of such partners, during the existence of the partnership, acting on information received through his copartnership relations, before he claims the partnership had ended, forms the purpose and does secretly purchase the land and to form a corporation to

take it, he must account to his copartners for the profits realized by him in the transaction.

That the options on which the copartnership agreement was based were not binding cannot affect the liability of the defendant.

2. BAR—RES JUDICATA.—That plaintiffs have elected to pursue remedies in other courts inconsistent with the remedy here invoked must be pleaded. But it is held the remedies invoked in other jurisdictions, which did not adjudicate the merits, were not inconsistent with the one invoked here.

3. LACHES—TENDER.—Plaintiff held not to be guilty of laches in bringing this action; nor can the defendant, after failing to account to them, now be heard to say they have failed to tender their share of the expenses. Laches defined.

4. PLEADINGS.—A PRAYER that the interest of plaintiffs would amount to "at least $100,000," and that plaintiffs are entitled to judgment for that sum, and to have defendant account for any other profits realized by him, does not limit plaintiffs to a recovery of $100,000.

5. JUDGMENT below affirmed with leave to plaintiff to prosecute the proceeding for further relief in accordance with the prayer of the complaint.

Before WATTS, J., Greenville, August, 1910. Affirmed.

Action by H. A. Edwards, W. J. Thackston and H. J. Haynsworth against R. E. Johnson. Both parties appeal.

*Messrs. C. F. Haynsworth, Cothran, Dean & Cothran* and *Busbee & Busbee,* for appellants. *Mr. Haynsworth* cites: *Johnson is estopped from denying the validity of the Edwards option:* 114 S. W. 410; 42 S. C. 74; 6 E. & B. 932; 92 U. S. 109. *Johnson stood in the position of constructive trustee:* 48 Am. R. 645; 57 Am. R. 153; 52 N. E. 656; Story on Part. 174-8; 61 N. Y. 125; 129 U. S. 512; 27 Miss. 494; 11 Mich. 222; 100 Am. Dec. 304; 21 Pac. 413; 57 Am. R. 153; 57 C. C. A. 646. *Where delay in enforcing a legal right is caused by promises of the other to adjust, he cannot insist on laches:* 64 S. C. 396; 43 S. C. 436; 60 Am. St. R. 322; 50 N. W. 143; 4 M. & S. 462.

*Election of inconsistent remedies must be pleaded:* Code of Proc. 170; 1 Ency. P. & P. 837; 86 N. E. 29; 39 N. E. 631.

*Messrs. Cothran, Dean & Cothran* cite: *Johnson is estopped from disputing the option of Edwards:* 42 S. C. 71; 6 E. & B. 932; 92 U. S. 109; Bigelow 657; 68 At. 914; 28 So. 120; 35 S. E. 82; 106 U. S. 468; 16 Cyc. 719-20, 803. *The legal effect of Johnson's breach of trust:* 48 Am. R. 645; 57 Am. R. 153; 52 N. E. 656; 5 L. R. A. (N. S.) 118; Story on Part. 174-8; 61 N. Y. 123; 129 U. S. 512; 57 C. C. A. 646; 27 Miss. 494. *Plaintiffs cannot be charged with laches:* 43 S. C. 436; 60 Am. St. R. 322; 50 N. W. 143; 64 S. C. 396. *No inconsistent remedies were invoked by plaintiffs:* 16 Cyc. 261; 86 N. E. 29; 39 N. E. 631.

*Messrs. Jno. C. Gittings* and *Jos. A. McCullough,* contra. *Mr. McCullough* cites: *The parties were partners for only a particular venture:* 14 S. C. 621. *When first option expired the partnership went out of existence:* 6 Pac. 830; 150 U. S. 526. *And Johnson has then the right to purchase for himself:* 150 U. S. 550; 1 McC. 16, 388; 1 McM. 211; 84 Pac. 172. *Edwards' option was void for want of consideration:* 6 Ency. 788; 101 S. W. 964; 62 S. E. 1029; 97 Pac. 160; 87 N. E. 874. *Defendant is not estopped by recitals in argument of facts not in existence:* 16 Cyc. 720; 57 Barb. 84; 3 McC. 429; 17 S. C. 7; 1 S. W. 560; 33 S. E. 382; 7 N. W. 393. *Contract here is void:* 81 Pac. 356. *Johnson had the right to purchase when he did:* 6 Pac. 803; 7 Pac. 286; 84 Pac. 172; 167 Fed. R. 631; 61 L. R. A. 176; 150 U. S. 550. *As to election of remedies:* 71 N. E. 1111; 101 N. W. 363; 15 Cyc. 257, 260; 155 U. S. 13; 78 N. W. 604; 71 N. W. 635; 22 N. E. 346; 20 So. 890.

November 20, 1911. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. This is an action for an accounting by the defendant to the plaintiffs for their share in profits alleged to have been realized by the defendant in a certain joint undertaking of the parties and which the plaintiffs claim to be entitled to recover by·reason of the relation of trust alleged to have existed. Both the plaintiffs and the defendant appeal from the decree of Judge Watts, which overruled certain findings and conclusions of the master and directed judgment in favor of the plaintiffs for the sum of one hundred thousand dollars.

The appeal by the defendant is upon numerous exceptions to the findings of fact and conclusions of law by the Circuit Judge and questions the correctness of the decree not only as to the right of the plaintiffs to judgment against the defendant for any sum whatever, but also as to the amount for which the defendant can in any event be held liable. The plaintiffs' appeal concedes the correctness of the findings and conclusions of the Circuit judgment as to all particulars, except as to the amount which they are entitled to recover.

It appears that, on or about the 15th day of June, 1904, an agreement in writing under seal was entered into between the parties plaintiff and defendant, whereby they associated themselves together for the purpose of making sale of a certain tract of timber land in Dare county, North Carolina, containing about one hundred and sixty-nine thousand acres, the said agreement embracing the statement that the said lands "are owned by certain parties who desire to dispose of the same, and who have approached the said H. A. Edwards for the said purpose," and also reciting that "said H. A. Edwards has in turn approached H. J. Haynsworth, R. E. Johnson and W. J. Thackston with the view of effecting a sale thereof." By this agreement it was covenanted between the plaintiffs and the defendant "that all of the said property and if the said lands should at any time be sold through the efforts of any of the said parties, then

all profits arising over and. above the price paid by the owners shall be divided in the manner hereinafter indicated." It may be remarked in passing that it is evident from the context that the words "by the owners" in the clause last above quoted, were intended and should be made to read "to the owners."

After reciting in said agreement that the price asked by the owners for the said lands was the sum of one hundred and twenty-five thousand ($125,000.00) dollars, and provided that "any commission which the said H. A. Edwards may be able to obtain from the owners out of said price shall go to him individually, this being compensation to him for all expenses heretofore incurred by him and all time spent in investigation of said property," it was stipulated that any other profits should be divided between the parties in the proportion of one-third thereof to the defendant and the remaining two-thirds to be equally divided among the plaintiffs, and that all expenses incurred in investigating said property and in efforts to make a sale thereof should be borne by the said parties in the same proportions as stipulated for the division of profits, provided that no such expense should be contracted unless three of the said parties should consent in advance to the incurring thereof and that any expense incurred otherwise than with such consent should be borne by the party contracting the same.

Irrespective of any question as to whether the plaintiff Edwards then held any valid option authorizing the sale by him of the said land, it is manifest that the provisions of agreement just recited are such as to constitute a partnership of the plaintiffs in the joint enterprise of endeavoring to sell the land in question for a price which would net a profit over and above the sum at which the owners were willing to sell. The agreement between the parties substantially was that they would each contribute to the expenses of the joint adventure in certain proportions and would each share in the profits in a like degree.

Beyond doubt, such agreement constituted a partnership in a joint adventure. See 30 Cyc. 366, 371. · The test of a partnership is the agreement to engage in a common business or adventure and to share the profits to be realized therefrom, as well as the expenses or losses incident thereto; and there can be no hesitation in reaching the conclusion, which does not appear to be seriously questioned, that the agreement was of such a character as to establish a partnership. 1 Lindley on Partnership, 4th ed., pp. 15, 18; *Williams, Black & Co.* v. *Connor,* 14 S. C. 621.

The fact that the so-called option obtained by the plaintiff H. A. Edwards from the owners of the property may have been without consideration and may not have been binding upon the signers thereof, has no bearing upon the question of the existence of the partnership between the plaintiffs and the defendants, as no reference is made to such option in the partnership agreement. Nor does the fact that this option may have expired, on or before the 23d of September, 1904, have any such bearing, further than that it may be taken as tending to show how long the partnership was intended to endure. Even, however, if the evidence as to the options be considered as shedding some light upon the last mentioned inquiry, it has a tendency to show that the parties contemplated the partnership as possibly extending to and beyond the date named.

By the terms of this partnership agreement, no limit of its duration was fixed, other than is contained in the provision that "the said parties will use their best efforts to effect a sale of said property and if the said lands should *at any time* be sold through the efforts of any of said parties," then there should be a division of the profits. As there is no definite statement in the agreement as to the date at which the partnership should determine, the term during which it was to continue in existence is a matter of inference from the nature of the engagement between the partners, the contract provisions and the facts and circumstances surround-

ing the parties; but if no such inference of an intention for its continuance for some period can be so ascertained, then the partnership agreement would necessarily be construed as being determinable at the will of any one of the partners, upon notice. 30 Cyc. 417; 1 Lindley on Partnership, paragraph 218.

Conceding the existence of the partnership prior to that time it may be important to determine whether it was still in force on the 23d day of September, 1904, when the acts of the defendant were done in alleged violation of the trust relation. In the first place it appears that the first option was extended to June 25, 1904, but before the expiration it was extended ninety days from that date, which carried the option to the close of September 23, 1904. Furthermore, language is used in the agreement which tends to show that the parties contemplated that the efforts of the partners in common enterprise might extend over some considerable period, since the expression used with reference to the time within which a sale of the land might be consummated, is the indefinite phrase "at any time;" which phrase would seem to involve the meaning by the parties that their agreement continue in force for such period as might reasonably be necessary to accomplish the purpose of the partnership or for such time as might reasonably be required to make it appear that such purpose could not be attained.

When the language of the partnership contract is considered with reference to the nature of the engagement undertaken, the limit of the options given by the owners and the facts and circumstances surrounding the parties and their acts and conduct at the inception of the common undertaking, it is practically certain that the parties intended that the partnership should endure for a period longer than the 23d of September, 1904, if such longer time should become necessary for the accomplishment of the partnership undertaking. Be this as it may, however, the partnership was nevertheless still in existence on and after the 23d of Sep-

tember, 1904, as even if it be considered as a partnership. for a term entirely indefinite and therefore determinable at the will of any partner, it had not in fact been determined at the date in question. While a partnership at will is of course capable of being brought to an end at the will of any partner, this result can only be accomplished by a notice of such determination given by the one partner to all of the others, and the partnership continues to exist until such notice is actually given. 30 Cyc. 418; 1 Lindley on Partnership, p. 222.

It is clear from the evidence in the case that no such notice was ever given by defendant, nor was there any intimation to his copartners of intention by him to end the partnership until after September 23, 1904, on which day the acts were done by defendant upon which the plaintiffs seek to hold him to account for the profits realized by him in breach of the partnership engagement. Indeed, there is no evidence that any notice was ever given to plaintiffs by defendant of his intention to end the partnership, and certainly they had no knowledge of any such intention on his part until some time after the date last above named.

On September 23, 1904, during the continuance of the partnership relation as already found, without the knowledge or consent of the plaintiffs and in violation of the partnership agreement, acting upon the supposition that there had been an expiration of the time limit of the option therefor originally held by one of the partners and which had become an asset of the partnership, the defendant R. E. Johnson secretly procured from the owners a contract for the sale by them to the said defendant of the same tract of land at the price of $125,000.00 dollars, of which amount the sum of $2,000.00 was agreed to be paid in cash and was so paid by the defendant, the sum of $3,000.00 was to be paid on January 1, 1905, and the balance in five equal semi-annual payments thereafter. The evidence shows not only that this contract was made during the continuance of the

partnership as already stated, but that such purchase had
been covertly contemplated by the defendant for some
period of time prior to the date of the making thereof, and
that some arrangements looking to that end had been pre-
viously made by him.

It further appeared that the defendant obtained the
knowledge of the facts, which enabled him to negotiate the
contract, solely by reason of the information derived by him
through his partnership relations with the said plaintiffs.

Having thus obtained for himself individually an inter-
est in these timber lands in abuse of the partnership trust
and confidence, in violation of his engagement as a member
of the partnership, the defendant forthwith proceeded to
promote and assist in the formation of a corporation, of
which he himself became the largest stockholder, and which
was manifestly designed chiefly for the purpose of purchas-
ing the timber lands in question; and having duly procured
the organization of said corporation with a capital stock of
$500,000.00 on the 14th day of October, 1904, the defend-
ant transferred and assigned to the said corporation his con-
tract for the purchase of the lands aforesaid and received
in exchange therefor fully paid stock of the said corporation
of the par value of $358,000.00. The proof is by the
admissions of the defendant himself, as testified to by wit-
nesses for the plaintiffs, that the stock in this corporation
was worth at least par, and that, therefore, the defendant
received from the corporation, as profits on the transaction
by which he had obtained the contract for the sale of the
said timber lands, the said sum of $358,000.00, less the sum
of $2,000.00, which he had paid to the original owners in
part and on account of the purchase price.

It is argued on behalf of the defendant that the profits
here under consideration were realized by him through his
own individual exertions after the termination of the part-
nership engagement and by the expenditure of his own
funds, and that no trust relation then existed by reason

whereof the plaintiffs can be held to share in the profits of this transaction. But the conclusions already announced show that, even if the view of the partnership agreement favorable to the defendant should be entertained and the partnership were held determinable at will and upon notice by any one partner, yet no such determination thereof had in fact taken place at the time of the acts in question, and that the plaintiffs and the defendant were then and thereafter partners, so as to require the defendant to be held to account for the profits so obtained by him. It is hardly necessary to cite the practically unbroken line of authorities holding that where partners engage in a common enterprise, each being the agent of the others for the promotion of the common purpose, no one of the partners, during the continuance of the partnership contract, can make a profit to himself in any matter of partnership endeavor, even by the use of his own private funds therein, without being held liable to account to his copartners for his shares of the profits so realized, just as if the undertaking had been in the name of the partnership.

In the work on partnership already mentioned, the rule is well stated as being that a partner "shall never obtain a private advantage at the expense of the firm" and is "bound in all transactions affecting the partnership to do his best for the common body and to share with his copartners any benefit which he may have been able to obtain from other people and in which the firm is in honor and conscience entitle to participate." 2 Lindley on Partnership, p. 572; 30 Cyc. 438; 454. There can be no question but that the law holds each member of a partnership to the highest degree of good faith in his dealings with reference to any matter which concerns the business of the common engagement, and that each partner being the agent of the firm, must be held during the existence of the relation to the same accountability as other trustees, in all matters which affect the common interest. Story on Partnership, 174, 178;

*Mitchell* v. *Reed,* 61 N. Y. 125 ; *Kimberly* v. *Arms,* 129 U. S. 512 ; *Henson* v. *Burns,* 41 S. W. 494.

The finding of the Circuit Judge is fully sustained by the evidence that the defendant did not act in good faith in the partnership relation with the plaintiffs, but that, during the time when it is admitted that the partnership engagement was in force, the defendant secretly formed the purpose of so acting with reference to the partnership interest as to defeat the object of the partnership and thereafter to obtain for himself the entire benefit which the firm had hoped to realize from a sale of the lands in question. We are satisfied from the evidence that, during the time the partnership agreement was admittedly in force, the defendant not only failed to carry out his agreement with his copartners in good faith, but that he then began a course of deception which was intended to promote his own secret purpose to prevent a sale of the property by the partnership, in order that he might thereafter be able to do that which eventually he did and thus obtain for himself the entire profits of such sale. This is shown by the proof as to the secret violation by the defendant in August, 1904, of the verbal undertaking had by him with his copartners that he would not have any personal interview, correspondence or other dealings with the owners from whom the options had been obtained, by his course of conduct towards his partners thereafter in advising against the purchase by the firm of the property, by the making of arrangements by him for the formation of the corporation which afterwards took title to the lands and of which he became the principal stockholder, by the fact that, for the second time and without notice to his copartners, he made a journey to the distant city in which the owners of the said lands resided, appearing there on the very day on which he calculated that the option held by the partners would expire, by his making a contract for such purchase on that day in his own name and by his procuring on that day the preparation and signature by widely

scattered corporators of a petition for a charter for the very
corporation which shortly afterwards became the purchaser
of these lands.   In view of these facts there can be no
doubt that so far from using "his best efforts to effect a
sale of the said property" for the benefit of the partnership
as stipulated in the partnership agreement, he had been
theretofore and was then engaged in exerting himself solely
and entirely in the promotion of his own private ends, with
the purpose and intention of depriving them of their shares
in the profits to be made by a sale of the lands in question.
In equity and good conscience he cannot be permitted to
retain for his own use profits so acquired, but must be held
to account for the same precisely to the same extent as if
they had been obtained in the name and for the benefit of
the partnership.   See *Trice* v. *Comstock,* 57 C. C. A. 646;
*Winn* v. *Dillon,* 27 Miss. 494; *Plugger* v. *Overyssell,* 11
Mich. 222; *Crumbley* v. *Webb,* 44 Mo. 444; *Lochard* v.
*Rollins,* 2 Ida. 503; *Gardner* v. *Ogden,* 22 N. Y. 327; *Davis*
v. *Hamlin,* 108 Ill. 39.

The cases of *Kayser* v. *Monaghan,* 6 Pac. 803; *Kennedy*
v. *Porter,* 17 N. E. 426, and *Lafferty* v. *Lafferty,* 34 At.
203, are not in conflict with the proposition just announced,
as those cases proceed upon the finding that the trust relation
had ended before the acts alleged to be in violation thereof
were done and that there had been no breach of good faith
during the continuance of the trust relation.

Our conclusion is also sustained by the application of
practically the same principles in the case of *Johnson* v.
*Hayward,* 5 L. R. A. (N. S.) 118; *Wood* v. *Rabe,* 48 Am.
Rep. 645; *Rose* v. *Hayden,* 57 Am. Rep. 153; *Butler* v.
*Prentise,* 57 N. E. 656; and in other cases cited in the Cir-
cuit decree.

But it is urged by the defendant that the plaintiffs were
put to an election as to whether they would seek their
remedy by an action for an accounting of profits, or by a

suit to impress the lands with a trust in their favor, or to have the stock in the said corporation issued to the defendant decreed to be held in trust for the benefit of the partnership; and that by the bringing of certain actions in North Carolina, both in the courts of that State and of the United States, in which the latter remedies were sought before the commencement of this action, the plaintiffs have already elected remedies inconsistent with that which is prayed in the suit at bar. As, however, no such defense was pleaded by answer in this case, it would be sufficient to say that no such issue is made by the pleadings and hence no such question is presented for determination. The defense being an affirmative one, the requirement of the Code is imperative that the same must be set up by answer in order to be available to the defendant. See Code of Civil Procedure, sec. 170; L. Enc. Pl. & Pr. 837; *Henry* v. *Etherington* (N. Y.), 86 N. E. 29; *Boberg* v. *Wynn,* 39 N. E. 631. The decree upon this point should therefore be affirmed for the reasons urged by the plaintiffs in their additional grounds in support of the same.

Waiving this consideration, however, it appears from the record that there is no real inconsistency between the remedy sought in the present action and that which some of the parties plaintiff herein endeavored to invoke in the actions heretofore commenced in the courts of such sister State and of the United States; nor was any adjudication had or relief granted upon the merits in any of said former actions. Indeed, it appears that one of the two actions brought by one or more of the present plaintiffs in the State Courts of North Carolina against the defendant Johnson and others and to which the other plaintiff or plaintiffs in the present action were made parties defendant as well as the third action commenced by one of the present plaintiffs against the same defendants and the corporation above mentioned in the United States Court for the District of North Carolina, were suits seeking substantially the same relief

which is sought in the present action, the primary remedy which was invoked in each of the said suits being an accounting, although relief was also prayed by way of a judgment *in rem;* while the first action was brought by the said H. A. Edwards alone against the parties who had given him the option for the sale of the said lands and was for the recovery of commissions alleged to be due him on the sale thereof, being the same commissions recognized by the said partnership contract between plaintiffs and defendants as belonging to said H. A. Edwards alone.

As is said in 16 Cyc. 261, "No act is decisive, so as to constitute a conclusive election, unless the remedial right upon which such act is based is irreconcilable with the remedial right which the subsequent action or suit is brought to enforce."

It is plain from the record that the remedies invoked in the three actions mentioned were not inconsistent with the relief demanded in this suit.

The appeal of the defendant also assigns error in the Circuit decree in the failure to hold that the plaintiffs are barred by *laches* from now maintaining this suit, such *laches* being claimed to consist in the delay in bringing this action and also in the failure of the plaintiffs to tender in due time to the defendant any part of the expenses said to have been incurred by the latter in making sale of the property in controversy.

In order to constitute *laches,* there must be shown not merely neglect for a time to enforce a legal or equitable right, where such neglect is for a period short of that which is a bar under the statute of limitations, but it must further be made to appear that such delay was accompanied either by a failure to perform some legal duty whereby prejudice has resulted to the person pleading such neglect, or that such delay was accompanied by some act on the part of the person so negligent, which operated to mislead the person pleading such neglect, to his prejudice to such an extent

that it would be unjust and inequitable thereafter to permit such negligent party to enforce such right. See *Demuth* v. *Old Town Bank,* 60 Am. St. Rep., 322; *Ripley* v. *Seligman,* 50 N. W. 143; *Selby* v. *Abithoe,* 4 Maule & S. 462; *Hellams* v. *Pryor,* 64 S. C. 396, 42 S. E. 106.

The evidence in this case entirely and completely fails to establish the claim that the plaintiffs were guilty of such *laches.* The evidence shows that from the time of first receiving information of the action of the defendant in the matter of making a contract on his own account with reference to said lands the plaintiffs undeviatingly insisted upon their right to a participation in the profits and repeatedly endeavored to induce the defendant to make a satisfactory settlement. Even the comparatively brief delay in commencing the suits in North Carolina appears to have been induced by the conduct and statements of the defendant himself, which seem to have been calculated to inspire the hope and belief on the part of the plaintiffs that an amicable adjustment of the matter might be reached.

It was the duty of the defendant to fully account to the plaintiffs for their shares of the profits realized in the transaction by which the lands were disposed of by him, and to pay over to the plantiffs their respective shares thereof. Failing to do this, it does not lie in his mouth to complain that the plaintiffs did not tender him their proportionate shares of the expenses incurred by him in that transaction. As is shown in the Circuit decree, no genuine offer of settlement was ever made by the defendant, and although it seems that one or more of the plaintiffs were for a time misled by him into the belief that he would ultimately make a fair accounting and settlement, no showing whatever has been made by the defendant of any action on the part of the plaintiffs or of any negligent delay on their part by reason whereof he was misled to his prejudice.

The decree of the Circuit Court is regarded as being correct as to all material findings of fact and as being sub-

stantially free from error in its conclusions of law as to the rights of the parties in the relations between them as therein considered and should be affirmed in all the particulars in which the same is questioned by the exceptions on the part of the defendant.

It remains to consider the appeal of the plaintiffs, by which it is averred that there was error in the conclusion of the Circuit Court that by reason of the terms of the prayer for relief of the complaint herein, the plaintiffs were precluded from recovering against the defendant any sum in excess of $100,000.00; whereas, as plaintiffs contend, there was no such limitations of the amount sought to be recovered in the prayer of the complaint. By their exceptions to said decree the plaintiffs further contended that, under the findings of fact of the decree, judgment should have been rendered in their favor and against the defendant for the sum of $237,333.20 instead of the sum so found by the said decree.

An examination of the complaint will show that it is therein alleged that the interest of the plaintiffs in the proceeds and profits realized by the defendant in the transaction in controversy would amount to "at least $100,000.00," and that it was therein further averred that "plaintiffs are entitled to recover said sum against the said R. E. Johnston and are entitled to have the defendant account for any further sums realized by him." The prayer of the said complaint for judgment against the said defendant is "for the sum of $100,000.00, and that he account for any further sums realized by him."

It is apparent, therefore, both from the terms of the allegations as to the accountability of the defendant and from the wording of the prayer for relief, that the Circuit Judge was in error in the conclusions that "the prayer of the complaint, after asking for an accounting, seeks judgment for $100,000.00," and that "the plaintiffs are therefore limited in their recovery to that sum."

The Circuit Judge found substantially that the defendant realized a profit of $356,000.00 upon the purchase and sale of the timber lands, the same being the cash value of the $358,000.00 received in stock therefor by defendant, less the $2,000.00 cash paid by him on the purchase price of the lands, and was inclined to allow plaintiffs their full *pro rata* share of that sum, but under his construction of the complaint limited recovery to $100,000.00.

After careful consideration this Court is satisfied that the amount of recovery allowed by the Circuit Court is fully supported by the testimony and is well vindicated by the able Circuit decree so far as it goes. We hesitate, however, to give absolute judgment beyond the recovery awarded by the Circuit decree, in the absence of a further and fuller showing as to the value the stock or property acquired by defendant as the result of the transaction under consideration.

The judgment of this Court is that the decree of the Circuit Court be affirmed to the extent of the relief granted, with leave to plaintiffs, if they be so advised, to prosecute this proceeding for further relief in accordance with the prayer of the complaint.