554 S.E.2d 431

**Vera BROWN, Carl Brown, Jr., Tiffany Brown and Latoya Brown, Respondents,**

v.

**Julie Brown BUTLER, Appellant.**

**No. 3396.**

Court of Appeals of South Carolina.

·Heard Sept. 6, 2001.

Decided Oct. 29, 2001.

Rehearing Denied Dec. 20, 2001.

Robert L. Gailliard, of Charleston, for appellant.

Charles S. Goldberg and Tiffany R. Spann, both of The Steinberg Law Firm; and Harold A. Oberman, of Oberman & Oberman, all of Charleston for respondents.

GOOLSBY, J.:

By this action, the respondents Vera Brown and her children, Carl Brown, Jr., Tiffany Brown, and Latoya Brown, sought to set aside a deed by which Carl Brown, Sr., Vera's estranged husband and the children's father, conveyed certain Charleston County property to Julie Brown Butler. The master-in-equity set aside the deed on the ground that the conveyance violated the Statute of Elizabeth.[1] Butler appeals. We affirm.

Vera Brown and Carl Brown, Sr., were married in 1976 and had three children, the other named respondents. Carl acquired the subject property in 1978 when his siblings deeded him the three-acre parcel for a stated consideration of five dollars. Carl and Vera constructed a shell home on the property, giving a note and mortgage to the builder Jim Walters. Working together, they finished the home.

In 1996, Carl contracted cancer. On February 10, 1996, Carl gave Vera a handwritten note ordering her to move out of the house by the "end of March." On being given the note, Vera told Carl she would seek the advice of a lawyer and would undertake to get what rightfully belonged to her and their children.

On February 22, 1996, Carl deeded the property to his sister Julie Brown Butler for a stated consideration of one dollar and love and affection. The deed, however, was not recorded until April 5, 1996. Sometime during that same month, Vera and Latoya, the only child then living at home with Vera and Carl, moved out.

Butler did not learn about the conveyance until January 1998, almost two years later, when Carl gave the deed to her. Butler valued the property at $49,000, based on prior tax assessments.

Vera sought legal counsel, both to protect whatever interest she had in the property and to obtain a separation from Carl. She went first to Legal Aid and later, in late February or early March 1997, to attorney F. Henderson Moore, Jr. Moore began work on Vera's case and had her sign a blank verification form and return it to him. Subsequently, Moore lost his

---

1. S.C.Code Ann. § 27–23–10 (Supp.2000).

privilege to practice law in South Carolina.[2] In August 1998, Vera retrieved her file and sought legal assistance elsewhere. As of that time, Moore had not brought suit against Carl.

Carl died intestate in June 1998, leaving Vera and the children as his sole heirs. On November 17, 1998, Vera filed an action against Carl and Butler requesting that the deed from Carl to Butler be set aside. This action was dismissed without prejudice by consent order. On February 23, 1999, Vera and the children filed another action requesting similar relief; this time, however, the complaint named only Butler as a defendant.

The master-in-equity to whom the circuit court referred the action ordered the deed set aside, finding the transfer of the property by Carl to Butler was in violation of the Statute of Elizabeth. The master also accorded no merit to Butler's laches defense.

## I.

Butler first argues the master's order is void because jurisdiction to determine whether the property constituted an asset of Carl's estate lay solely with the probate court. We disagree.

Butler relies upon South Carolina Code section 62–1–302(a)(1), which provides in pertinent part:

(a) [E]xcept as otherwise specifically provided hereinafter, the court has *exclusive original jurisdiction* over all subject matter related to:

(1) estates of decedents, including the contest of wills, construction of wills, and determinations of heirs and successors of decedents and estates of protected persons.[3]

The action here, however, is not against Carl. It is against Butler. It is neither an action to contest or construe a will, to determine heirs and successors of a decedent, nor to determine the estate of a protected person. Rather, the action is

---

**2.** The supreme court issued an opinion dated December 16, 1997, suspending Moore from the practice of law for one year. *In re Moore,* 329 S.C. 294, 494 S.E.2d 804 (1997).

**3.** S.C.Code Ann. § 62–1–302(a)(1) (1987 and Supp.2000) (emphasis added).

one to set aside a deed, and it is brought against one who is very much alive and litigating.[4]

The case relied on by Butler, *Parker v. Shecut,*[5] does not aid her. There, the property in question formed part of the decedent's estate. Here, Butler received legal title to the property as a result of an *inter vivos* conveyance and held title for several months before the transferor's death.[6]

## II.

 Butler next argues the master erred in holding Carl violated the Statute of Elizabeth[7] when he conveyed the property to her. More specifically, she attacks the finding that undergirded the master's holding, namely that Vera fell within the class of those protected by the statute. As we understand Butler's argument, she contends that a wife must have an interest in the property conveyed at the time of the conveyance to be so protected and that, because Carl alone held title to the property and because Vera had not brought a

---

**4.** Vera did not name Carl's estate as a party, nor was she required to do so in order to proceed. *See Powell v. Green*, 281 S.C. 358, 315 S.E.2d 183 (Ct.App.1984) (holding the grantor in an allegedly fraudulent conveyance is not a necessary party in an action to set aside the transfer because she was deemed to have parted with all interest in the subject property).

**5.** 340 S.C. 460, 531 S.E.2d 546 (Ct.App.2000), *cert. granted* (Jan. 11, 2001).

**6.** *Cf. Shelley v. South Carolina Dep't of Mental Health*, 283 S.C. 344, 322 S.E.2d 687 (Ct.App.1984) (holding that, under the former probate code, the statutory grant of jurisdiction "in all matters testamentary and of administration" to probate courts does not embrace jurisdiction in an equitable action to dissolve a lien of a health-care provider for care given to a deceased).

**7.** The present version of the statute reads in pertinent part as follows:
Every ... feoffment, gift, grant, alienation, ... of lands ... by writing ... which may be had ... for any intent or purpose to ... defraud *creditors and others* of their just and lawful actions, suits, debts, accounts, damages, penalties and forfeitures shall be deemed ... to be clearly and utterly void....
S.C.Code Ann. § 27-23-10 (Supp.2000) (emphasis added). This version took effect June 10, 1997, which was after Carl executed the deed in question but before he delivered it to Butler.

divorce action against him before he conveyed it away, Vera had no interest protected by the Statute of Elizabeth.

We hold, however, an estranged wife in Vera's position has a sufficient interest in property titled in her husband's name to set aside a conveyance that could adversely affect her claims for separate support and maintenance, for alimony, or for an equitable division of the marital property.[8] Even if not a "creditor," an estranged wife would fall within the phrase "and others," a phrase that the statute also uses and refers to "persons who, like creditors, have causes of action which may be prejudicially affected by a transfer of assets by one against whom the right of action exists." [9]

## III.

We find no merit to Butler's argument that the family court had sole jurisdiction to apportion marital property and the action was therefore improperly before the master. The master did not undertake in this case to apportion marital property between a husband and wife, but merely set aside a deed by which a husband conveyed away property titled in his name.

---

8. *See* S.C.Code Ann. § 20–3–130(C)(8) (Supp.2000) (requiring the family court to consider both marital and nonmarital properties of the parties in making an award of alimony or separate support and maintenance); *id.* § 20–7–471(recognizing a spouse's acquisition of a vested special equity and ownership in marital property); *cf. Smith v. Smith,* 327 S.C. 448, 458, 486 S.E.2d 516, 521 (Ct.App.1997) (holding the family court, in dividing the marital property, properly considered actions taken by the husband before the parties' actual separation, including "substantial steps to make the tracking of marital assets difficult"); *Rush v. Smith,* 239 Ark. 706, 394 S.W.2d 613, 616 (1965) ("A husband's colorable disposition of assets to defeat his wife's property rights in pending *or anticipated* divorce suit may be found to be fraudulent.") (emphasis added); *Wallace v. Wallace,* 170 W.Va. 146, 291 S.E.2d 386, 389 (1982) ("[C]ourts have recognized that a spouse has a right to protect a potential alimony award or property settlement from improper transfers *before marriage, ... or in contemplation of divorce ....*") (emphasis added); 41 C.J.S. *Husband and Wife* § 12, at 308 (1991) ("Conveyances of real property made by one spouse during marriage for the purpose of defeating the rights of the other spouse are fraudulent and void, or at least voidable.").

9. 37 Am.Jur.2d *Fraudulent Conveyances* § 118, at 618 (2001).

## IV.

Butler faults Vera for waiting until March 1997 to seek legal assistance and until November 1998, after Carl had died, to bring suit. She argues laches should bar this action. We find no reversible error.

The determination of whether laches has been established is largely within the discretion of the trial court.[10] Delay alone is not enough to constitute laches; it must be unreasonable, and the party asserting laches must show prejudice.[11] The question of whether a claim is barred by laches is to be determined in light of the facts of the particular case.[12]

We hold the master did not abuse his discretion in declining to make a finding of laches. After Carl ordered her to leave the marital residence, Vera first sought representation from Legal Aid and, later, in February or March 1997, from attorney Moore. After dismissing without prejudice an action brought in November 1998 challenging Carl's secret conveyance of the property to Butler, Vera and her children brought the present action in February 1999. What delay there was in bringing this action can be laid principally at the feet of attorney Moore and somewhat to the dismissal without prejudice of the earlier action brought by Vera's second attorney. Under the circumstances, we do not consider the delay in bringing suit unreasonable.

We do not overlook Butler's argument, citing *Citizens' Bank v. Heyward*,[13] and *Bank for Savings and Trusts v. Towe*,[14] that the acts and omissions of Vera's attorney are attributable to her. But this is not a hard and fast rule. Rather, it is one that is "to be applied rationally, with a fair recognition that justice to the litigants is always the pole-

---

10. *Grossman v. Grossman*, 242 S.C. 298, 130 S.E.2d 850 (1963).

11. *Hallums v. Hallums*, 296 S.C. 195, 371 S.E.2d 525 (1988).

12. *Id.* at 198–99, 371 S.E.2d at 527.

13. 135 S.C. 190, 133 S.E. 709 (1925).

14. 231 S.C. 268, 98 S.E.2d 539 (1957).

star."[15] Vera and her children could not have anticipated attorney Moore would not have promptly brought suit against Carl after Vera signed and returned the verification to him. Neither could they have anticipated Moore would later lose his privilege to practice law before suit was brought, thus necessitating their obtaining new counsel to bring an action.[16]

Finally, as to prejudice, Butler argues only that Carl died before Vera's second action was filed. This fact in and of itself is insufficient to support a finding of prejudice to bar an action on the ground of laches.[17] "As with waiver, laches arises upon the failure to assert a known right under circumstances indicating that the lached party has abandoned or surrendered the right."[18] Although this is an equity matter, for which laches can be a viable defense even if the statute of limitations does not apply, we hold that Butler failed to meet the heightened burden of proof placed on one asserting the defense of laches in a situation, such as this one, in which the underlying action was brought within the applicable limitations period. She has not directed our attention to anything in the record suggesting that the delay in filing suit was accompanied either by a failure on the plaintiffs' part to

**15.** 7A C.J.S. *Attorney & Client* § 181, at 284 (1980); *cf. Graham v. Town of Loris*, 272 S.C. 442, 248 S.E.2d 594 (1978) (holding the general rule that an attorney's neglect is attributable to the client does not apply if there has been a wilful and unilateral abandonment of ·client by counsel); 27A Am.Jur.2d *Equity* § 148, at 626 (1996) ("Fairness will bar application of laches where the result would be unjust; laches does not operate harshly, as may a statute of limitation. Statutes of limitation, further, may work great practical injustice—the doctrine of laches, never.").

**16.** "[T]he general rule that a client is bound by the acts and omissions of his attorney may not apply ... where the conduct of counsel is outrageously in violation of ... his implicit duty to devote reasonable efforts in representing his client." 7A C.J.S. *Attorney & Client* § 181, at 285 (1980).

**17.** *See* 27A Am.Jur.2d *Equity* § 189, at 666–67 (1996) ("For laches to apply in cases where real property is in dispute, there generally must be prejudice arising from some change in the condition or relation of the property or parties such that it would be unfair to allow maintenance of the claim.").

**18.** *Provident Life & Accident Ins. Co. v. Driver*, 317 S.C. 471, 479, 451 S.E.2d 924, 929 (Ct.App.1994).

perform a legal duty or by a negligent act on their part that misled her to the extent that it would be inherently unfair to allow Vera and the children to proceed on their cause of action.[19]

**AFFIRMED.**

HUFF and STILWELL, JJ., concur.

**19.** The supreme court, discussing the burden of proof on one asserting the defense of laches in a lawsuit filed within the applicable limitations period, stated as follows:

In order to constitute laches, there must be shown, not merely neglect for a time to enforce a legal or equitable right, where such neglect is for a period short of that which is a bar under the statute of limitations, but it must further be made to appear that such delay was accompanied either by a failure to perform some legal duty, whereby prejudice has resulted to the person pleading such neglect, or that such delay was accompanied by some act on the part of the person so negligent, which operated to mislead the person pleading such neglect, to his prejudice to such an extent that it would be unjust and inequitable thereafter to permit such negligent party to enforce such right.

*Edwards v. Johnson*, 90 S.C. 90, 103–104, 72 S.E. 638, 644 (1911).