THIS OPINION HAS NO PRECEDENTIAL
VALUE.  IT SHOULD NOT
BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH
CAROLINA
In The Court of Appeals

 
 
 
 Dianne
 Panther,        Appellant,
 
 
 

v.

 
 
 
 Joseph H. Panther, Ron
 Avenger, Michael Catto, individually and as agent of Catto Enterprises,
 Inc., Phillip Catto, individually and as agent of Catto Enterprises,
 Inc., Catto Enterprises and Carolina Southern
 Bank,        Respondents.
 
 
 

Appeal from Spartanburg County
J. Derham Cole, Circuit Court Judge

Unpublished Opinion No.
2005-UP-426
Heard April 4, 2005  Filed June 30, 2005

AFFIRMED

 
 
 
 J. Michael Turner, of
 Laurens, for Appellant.
 H. Michael Spivey, of
 Mauldin; and Michael N. Duncan, and Steven Michael Querin, both of Spartanburg,
 for Respondents.
 
 
 

PER CURIAM:  Appellant
Dianne Panther brought this action against her husband, Joseph Panther,
along with Ron Avenger, and Michael and Phillip Catto, individually and as
agents of Catto Enterprises, L.L.C., alleging civil conspiracy and constructive
trust.  The causes of action arise from Joseph Panthers sale of the
couples marital residence to Catto Enterprises.  The trial court denied
Appellants claims for relief.  We affirm.
FACTS
The present dispute originates from
the marital difficulties of Joseph and Dianne Panther.  The couple has been
married for over 35 years, and, based on the record before us, continued to be
married throughout the course of this litigation and remain married today.
This case centers around Josephs
decision to sell or otherwise transfer ownership of the couples home during a
period of marital discord.  The property, which consists of a house and
fourteen acres of land, was purchased by Joseph Panther several years after the
couple married.  It is titled solely in Josephs name.  This home
wasand remainsthe Panthers marital residence. 
In the 1990s, Joseph engaged in an
extramarital affair.  He grew increasingly concerned Dianne would discover
the affair and claim an interest in the marital residence as part of an
anticipated divorce proceeding.   Joseph turned to a friend, Ron
Avenger, for advice on how to prevent Dianne from acquiring the property should
she initiate a divorce action.   
As it happened, Avenger was uniquely
positioned to help Joseph in this regard.  At the time, Avenger was a
licensed real estate broker working for Catto Enterprises, L.L.C., a small
concern owned and managed by Michael and Phillip Catto.  Part of
Avengers job at the firm was to identify potential investment properties for
Catto Enterprises.  He saw such an opportunity in Joseph Panthers
situation.
Avenger subsequently arranged a
meeting between Joseph and the Cattos.  At the meeting, according to
Phillip Cattos testimony, Joseph made plain his objective: to shaft his
wife on the house because he was leaving her for another woman.  Michael
Catto similarly testified Joseph informed him he was living with another
woman and that he felt like when [Dianne] found out . . . she probably would
leave him. 
Ultimately, a deal was struckthough
the basic terms of the agreement are contested.  According to Joseph, the
Cattos agreed to hold my house in trust until I could come back and get it or
wanted it back in exchange for $45,000 cash Joseph purportedly paid to the
Cattos.  Avengers testimony supports Josephs claim that the property
was to be held by the Cattos in some type of trust arrangement for the benefit
of Joseph:  Mike [Catto] said, well, you know, we can hold it and just
transfer it to me and Ill give you a letter saying that you can get it back
any time you want to.  The Cattos, however, assert they made no such
agreement to return the property.  Rather, the Cattos maintain they agreed
to  purchase the property for $45,000. 
No written sales agreement was
executed.  However, with the aid of an attorney, the parties agreed to
effect the transaction and proceed with a real estate closing.  At the
closing, Catto Enterprises issued two checks totaling $45,000.  Michael, on
behalf of Catto Enterprises, wrote one check to the closing attorney for the
payoff amount for Josephs mortgage plus the closing costs, and another to
Joseph for the balance.   
Catto Enterprises promptly mortgaged
the property, appraised at $145,500, to secure a $100,000 line of credit with
Carolina Southern Bank. 
The Panthers were thereafter
involved in the anticipated family court litigation wherein Dianne sought an
equitable interest in the marital residence as part of the division of the
marital estate.  Following the trial in this caseas stipulated in the
briefs and conceded at oral argumentthe Panthers reconciled and the family
court proceeding was dismissed.  Again, the record before us reveals that
the Panthers continue to reside together as husband and wife. 
This Action
Dianne filed this action against
Joseph, Avenger, Michael and Phillip Catto, Catto Enterprises, and Carolina
Southern Bank.  She alleged civil conspiracy against all defendants, except
Carolina Southern Bank, and requested the trial court declare a resulting trust
or, in the alternative, a constructive trust in her favor. 
A bench trial was held on all three
claims.  Although the Panthers are now reconciled, at the time of the
trial, Dianne and Joseph were separated and had a divorce action pending. 
The trial court found for the defendants on all causes of action.  Dianne
filed a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP,
which the trial court denied.  This appeal followed. 
LAW/ANALYSIS
I. Civil Conspiracy
Dianne argues the trial court erred
in finding Joseph, Avenger, Michael and Phillip Catto, and Catto Enterprises not
liable for civil conspiracy.  Although we find the trial court erred in
ruling that only unlawful acts may give rise to a conspiracy claim, the
dismissal of the family court litigation precludes her from establishing the
necessary element of special damages. 
It is well-settled in South
Carolina that the tort of civil conspiracy contains three elements: (1) a
combination of two or more persons; (2) for the purpose of injuring the
plaintiff; (3) causing plaintiff special damage.  Kuznik v.
Bees Ferry Assocs., 342 S.C. 579, 610, 538 S.E.2d 15, 31 (Ct. App.
2000).  In order to establish a conspiracy, evidence, either direct or
circumstantial, must be produced from which a party may reasonably infer the
joint assent of the minds of two or more parties to the prosecution of the
unlawful enterprise.  First Union Natl Bank of South
Carolina v. Soden, 333 S.C. 554, 575, 511 S.E.2d 372, 383 (Ct. App.
1998).[1]
In its order, the trial court
stated:  There can be no conspiracy established where the acts
complained of, and the means employed in doing the act, are lawful, and so long
as the parties seek only to further their own fair interests.  This
legal conclusion is in error.  From a factual standpoint, the trial court
found Michael and Phillip were aware of Josephs intent to defraud his spouse
of any interest she may have had in the property, and the record supports this
finding.  However, the trial court further found that the desire [of the
Cattos] to further their own self-interest was the predominate motive for the
Cattos participating in the transaction, and that the fact that it would also
benefit Mr. Panther was of no consequence to the Defendants, Catto.  
A civil conspiracy may, of
course, be furthered by an unlawful act.  However, an unlawful act is not a
necessary element of the tort.  An action for conspiracy may lie even
though no unlawful means are used and no independently unlawful acts are
committed.  Lee v. Chesterfield Gen. Hosp., Inc., 289
S.C. 6, 11, 344 S.E.2d 379, 382 (Ct. App. 1986) (citations omitted). 
Therefore, the trial court incorrectly stated a lawful act or lawful means can
never form the basis of a civil conspiracy claim.  In addition, the trial
court concluded that, because the Cattos were motivated by profit, they did not
act for the purpose of injuring Dianne.  We do not view the Cattos
profit-motive as mutually exclusive from their intent to harm Dianne. 
Gaining a profit or other form of self-interest lies at the heart of virtually
every conspiracy scheme.  Here, the Cattos were aware of the harm to Dianne
upon purchasing the property, regardless of their concomitant desire to profit
from the transaction.  The intent element necessary to establish a civil
conspiracy is clearly met. 
We nevertheless find Diannes
civil conspiracy claim must fail.  Specifically, we find Dianne cannot
satisfy the requirement of proving special damages to establish her civil
conspiracy claim because she cannot establish a cognizable interest in the
property.  Rule 220(c), SCACR, provides:  The appellate court may
affirm any ruling, order, or judgment upon any ground(s) appearing in the Record
on Appeal. 
Section 20-7-471 of the South
Carolina Code (Supp. 2004), dealing with a spouses acquisition of a special
equity interest and ownership right in marital property, provides: 

 During the marriage a spouse shall
 acquire, based upon the factors set out in § 20-7-472, a vested special
 equity and ownership right in the marital property as defined in § 20-7-473,
 which equity and ownership right are subject to apportionment between the
 spouses by the family courts of this State at the time marital litigation
 is filed or commenced as provided in § 20-7-472.

(emphasis added).  In Prosser
v. Pee Dee State Bank, 295 S.C. 212, 367 S.E.2d 698 (1988),
the South Carolina Supreme Court interpreted this statute.  The supreme
court determined:

 The ownership right in marital
 property is acquired during marriage.  Marital property as such
 does not exist until the date when marital litigation is filed or
 commenced.  The ownership right in marital property, then,
 cannot attach until that property is created by the filing of marital
 litigation.

Id. at 214, 367 S.E.2d at 700
(citation omitted).  Further, in regard to this section, we stated: By
requiring the estate to be identified as of the date marital litigation is
filed, the Legislature has elected to foreclose the spouses from litigating
every expenditure or transfer of property during the marriage.  Panhorst
v. Panhorst, 301 S.C. 100, 105, 390 S.E.2d 376, 379 (Ct.
App. 1990). 
Joseph solely held title to the
property sold to Catto Enterprises.  Therefore, for purposes of this
action, Dianne asserted she owned an equitable interest in the property as
marital property.  However, because the marital litigation between Joseph
and Dianne was dismissed, her purported interest in the property was never
judicially determined.   Thus, Diannes lack of a recognized
interest in the property warrants the conclusion as a matter of law that she
cannot establish the damage component of the civil conspiracy claim. 
Appellants counsel, however,
argues a finding that Dianne suffered no special damage or injury is untenable
in light of this courts ruling in Brown v. Butler, 347 S.C. 259, 554
S.E.2d 431 (Ct. App. 2001).  In that case, a husband and wife had a falling
out and separated.  The wife told her husband that she would take legal
action to get what rightfully belonged to her and their children. Id.
at 261, 554 S.E.2d at 432.  Before she could take such action, however, the
husband deeded to his sister a three-acre parcel of real property he acquired
during the marriage.  The husband died intestate before any of the
threatened marital litigation was commenced.  The wife subsequently brought
an action to set aside the deed to the husbands sister, claiming the transfer
of property violated the Statute of Elizabeth. Id. at 262, 554 S.E.2d at
432.  This statute reads, in pertinent part:

 Every gift, grant, alienation,
 bargain, transfer, and conveyance of lands, . . . by writing or otherwise . .
 . which may be had or made to or for any intent or purpose to . . . defraud
 creditors and others of their just and lawful actions, suits, debts, accounts,
 damages, penalties, and forfeitures must be deemed . . . to be clearly and
 utterly void . . . .

S.C. Code Ann. § 27-23-10 (Supp.
2004).  Applying this provision, the trial court set aside the deed. 
On appeal, we affirmed the lower courts ruling:

 We hold, however, an estranged
 wife in [the respondents] position has a sufficient interest in property
 titled in her husbands name to set aside a conveyance that could adversely
 affect her claims for separate support and maintenance, for alimony, or for an
 equitable division of the marital property.  Even if not a creditor,
 an estranged wife would fall within the phrase and others, a phrase that
 the statute also uses and refers to persons who, like creditors, have
 causes of action which may be prejudicially affected by a transfer of assets
 by one against whom the right of action exists.

Brown, 347 S.C. at 264, 554 S.E.2d at 433 (footnotes
omitted). 
We find the rule set out in Brown
is inapplicable under the distinct facts and circumstances of the instant case.[2]  The present case comes to us
in a fundamentally different posture than that of Brown.  Unlike the
estranged wife in Brown, Dianne Panther continues to live in the full
communion of marriage with Joseph.  All marital litigation between the two
was abandoned, and they are reconciled, living together as husband and
wife.  On the other hand, the marital litigation in Brown was
imminent.  The facts of that case reveal the wife had actually begun the
process of initiating legal action, though such action was not perfected prior
to the husbands death.[3]  In
addition, the wife in Brown sought to have title to the subject property
returned to her husbandspecifically, his estateso that her rights in the
distribution of the estate could be protected.  In the present case, Dianne
did not seek to have title restored to Joseph or otherwise preserve the asset
for ultimate determination of ownership rights in the family court. 
Rather, Dianne is seeking damages while continuing in the marital relationship
with no present contemplation of marital litigation.  Therefore, it cannot
be said that Dianne occupies a position analogous to that of a creditor as
found in Brown and as contemplated under the Statute of Elizabeth. 
We therefore conclude Appellants
reliance on Brown is misplaced, and find her claim for civil conspiracy
must fail for lack of showing special damages.[4]
II.  Constructive Trust
Next, Dianne argues the trial court
erred by not imposing a constructive trust on the property Joseph sold to the
Cattos.  We disagree.
An action to declare a constructive
trust is an action in equity, and thus, an appellate court may find the facts in
accordance with its own view of the evidence.  Macaulay v. Wachovia Bank
of South Carolina, N.A., 351 S.C. 287, 294, 569 S.E.2d 371,
375 (Ct. App. 2002).  To establish a constructive trust, the evidence must
be clear and unequivocal.  Id. 

 A constructive trust arises
 whenever circumstances under which property was acquired make it inequitable
 that it be retained by the one holding legal title.  These circumstances
 include fraud, bad faith, abuse of confidence, or violation of a fiduciary
 duty which gives rise to an obligation in equity to make restitution.

Hendrix v. Hendrix, 299 S.C.
233, 235, 383 S.E.2d 468, 469 (Ct. App. 1989).
At the time Dianne filed this
action, Catto Enterprises held legal title to the property and Carolina Southern
Bank held an undisputedly valid mortgage on the property.  Based on our
review of the record, we find Dianne failed to establish facts entitling her to
relief under a constructive trust theory.  Specifically, we find no
confidential relationship existed between Dianne and the Cattos or Catto
Enterprises.  We further concur in the trial courts conclusion that, if
a constructive trust were to be imposed under the facts of this case, every sale
of property solely owned by one spouse would be subject to the imposition of an
equitable lien in favor of the non-owning spouse who was not in agreement with
the sale . . . . This requirement would impose an unreasonable impediment to the
orderly transfer of real estate in the market. 
A constructive trust may also be
imposed against someone who withholds property from someone who is beneficially
entitled to it.  See SSI Med. Servs., Inc. v. Cox, 301
S.C. 493, 500, 392 S.E.2d 789, 793-94 (1990) (holding that [a] constructive
trust arises whenever a party has obtained money which does not equitably belong
to him and which he cannot in good conscience retain or withhold from another
who is beneficially entitled to it . . . .).  As discussed above, Dianne
did notand does nothave a cognizable ownership interest in the property,
and therefore was not beneficially entitled to the property. 
Moreover, if we were to impose a
constructive trust under these facts, the benefit of the constructive trust
would flow only indirectly to Dianne.  The imposition of a trust would
require a return of the property to the prior owner of the property, Joseph, who
instigated the plan to shaft Dianne.  The law will not permit a
party to deliberately put his property out of his control for a fraudulent
purpose, and then, through intervention of a court of equity, regain the same
after his fraudulent purpose has been accomplished.  All v. Prillaman,
200 S.C. 279, 308, 20 S.E.2d 741, 753 (1942) (quoting Jolly v. Graham, 78
N.E. 919, 920 (Ill. 1906)).
  For these reasons, we find
the trial court properly denied Diannes request for the imposition of a
constructive trust on the property. 
CONCLUSION
We find that Dianne Panthers
claim for civil conspiracy must fail because she failed to prove special
damages.  We also concur in the trial courts denial of her request for
the imposition of a constructive trust. 
AFFIRMED.
HEARN, C.J., KITTREDGE and
WILLIAMS, JJ., concur.

[1]  An action for civil conspiracy is an action at law, and
the trial judges findings will be upheld on appeal unless they are without
evidentiary support.  Gynecology Clinic, Inc. v. Cloer, 334
S.C. 555, 556, 514 S.E.2d 592, 592-93 (1999).  Although an action for civil
conspiracy is normally an action at law, the character of the action as legal or
equitable depends on the relief sought.  First Union, 333 S.C. at
574, 511 S.E.2d at 382 (noting that in an action for civil conspiracy, [w]hen
equitable relief is sought . . . the action is one in equity).  Our
review of the claimed legal error is plenary in nature regardless of the
characterization of Diannes complaint as primarily legal or primarily
equitable.
[2] In addressing Dianne Panthers resort to and reliance upon the
rule set out in Brown v. Butler, we initially note that, in the present
case, no issue or argument was raised to the trial court concerning the Statute
of Elizabeth.  Nevertheless, we find it proper to address the applicability
of this case and rule in light of our decision to affirm the trial courts
ruling on the additional sustaining ground concerning the failure to show
special damage or injury.
[3] In Brown, the wife hired an attorney who began preparing
the filings for her case.  Before the commencement of the suit could occur,
however, the wifes attorney lost his privilege to practice law in South
Carolina, forcing the wife to retrieve her file and seek legal assistance
elsewhere.  Her husband died shortly thereafter.  Brown, 347
S.C. at 261-62, 554 S.E.2d at 432.
[4]  We find a remand to the circuit court inappropriate and
unnecessary.  First, a remand is not requested as a result of the dismissal
of the family court action and Appellants concomitant forfeiture of her
cognizable interest in the property.  The information is presented to us
only in the context of an additional sustaining ground.  Second, a remand
would be an exercise in futility in light of Appellants abandonment of the
family court action.